# CRIMINAL CASES.*

### COMMONWEALTH *vs.* LUTHER M. HARRIS & another.
### SAME *vs.* SAME.
### SAME *vs.* SAME.
### SAME *vs.* SAME.

The Gen. Sts. *c.* 167, § 6, prohibiting the making, selling or having in possession with intent to sell, false or fictitious lottery tickets, and imposing a punishment therefor, apply to tickets in lotteries set up in this commonwealth as well as elsewhere.

No presumption arises, under Gen. Sts. *c.* 167, § 7, that a lottery ticket is false or fictitious unless the defendant has sold the same, or offered it for sale, or received a valuable consideration therefor.

An indictment under Gen. Sts. *c.* 167, § 6, for selling, or having in possession with intent to sell, a false and fictitious lottery ticket, which is described, need not set forth the nature of the lottery, or negative the existence of any lottery, or show in what respect the ticket is false or fictitious.

An indictment under Gen. Sts. *c.* 167, § 1, for setting up and promoting an illegal lottery, need not more particularly describe the acts done by the defendant; nor is such indictment bad for duplicity because it charges that the defendant set up and promoted such lottery.

One who has set up or promoted an illegal lottery in this commonwealth, and sold tickets therein to different persons, may be convicted and sentenced for such setting up or promotion of the lottery, under Gen. Sts. *c.* 167, § 1; for selling a ticket therein to one person, under Gen. Sts. *c.* 167, § 3; and for selling a false and fictitious lottery ticket to another person, under Gen. Sts. *c.* 167, § 6.

WELLS, J. These are indictments under Gen. Sts. *c.* 167. The *first* is founded upon section 1 of that chapter, and alleges that the defendants did, on the 22d day of May 1865, at Boston, " set up and promote a certain lottery, called the National Prize Distribution, and which said lottery was then and there for money, to wit, for seventy thousand dollars."

The *second* is upon section 3, and alleges that the defendants, on the 23d day of May 1865, at Boston, " did have in their possession, with the intent to sell the same, and to offer the same for sale, a certain share of a ticket, to wit, one half ticket in a lottery for money, which said lottery was then and there set

* These cases were argued in November 1866, and in January and March 1867 in Boston. All the judges were present during portions of the sittings.

up in said commonwealth, to wit, at said Boston, and was then and there called and known as the National Prize Distribution," &c. A copy of the half ticket is annexed, numbered 11,325, which represents that the drawing will be in Boston on Saturday, June 17, 1865. Another count sets forth the other half of the same ticket.

The *third* is upon section 6, and alleges that the defendants, at Boston, on the 23d day of May 1865, "did have in their possession, with intent to sell the same, a share of a certain false and fictitious lottery ticket, to wit, the one half of such false and fictitious lottery ticket," well knowing the same to be false and fictitious. The ticket is set forth by copy, and purports to be in "The National Prize Distribution, authorized and licensed by the United States, draws in the city of Boston, Saturday, May 27, 1865," and is numbered 9,400. A second count sets forth the other half of the same ticket as a ticket in a fictitious and pretended lottery.

The *fourth* indictment is upon the same section, and alleges a sale, on the 23d day of May 1865, of two halves of a similar ticket to Mrs. Stewart, and the receipt of money therefor, " to wit, two one half parts of a false and fictitious lottery ticket, each of the said shares then and there purporting that the holder thereof was and shall be entitled to receive one half of such prize as may be drawn in the lottery, by the number representing the whole ticket," well knowing, &c. The tickets set out by copy are precisely the same as in the third case, except the number, which is 19,582.

Two schemes are annexed to the bill of exceptions, both headed " L. M. Harris & Co.'s National Prize Distribution," offering prizes in various sums, amounting in all to $70,000, in each scheme, to be drawn in the city of Boston, one on the 27th day of May 1865, and the other on the 17th day of June 1865. In all other respects both schemes are alike. The defendants admit that they did set up these two lotteries in the city of Boston. For which of them they are arraigned, in the first indictment, it does not appear ; and perhaps it is not material in this investigation.

The objection, which is of most importance to these defend-
ants, and therefore most strongly urged, relates to the third and
fourth of these indictments. It is contended that the sixth sec-
tion does not apply to lotteries actually set up in this state ·
that such lotteries are punishable by the first five sections of this
chapter; and, as the provisions of those five sections apply to
every possible form of participation in that offence, it is to be
presumed that the sixth section was intended to apply only to
an offence of a higher degree of criminality, and therefore pun-
ishable by the much more severe penalty attached to that
section.

This argument would certainly have very great force, and
perhaps might require the adoption of that construction, but for
the provisions of the next following section. That section re-
quires that lottery tickets offered for sale " shall be deemed
false, spurious or fictitious, unless " the defendant proves that
they were " duly issued by the authority of some legislature
within the United States," and also were " binding upon the
persons who issued the same." The first five sections apply to
all lotteries and lottery tickets, wherever the lotteries are lo-
cated, whether authorized by legislative authority elsewhere or
not. *Commonwealth* v. *Dana,* 2 Met. 329. The sixth and
seventh sections were originally adopted at a later period. *St.*
1833, *c.* 148, § 3. They indicate a purpose to suppress these
offences by penalties more stringent and more to be dreaded by
the offenders than the mere pecuniary imposition, which their
gains would enable them to liquidate with ease. It is not to be
supposed that, in such an effort, the legislature could have in-
tended to place lottery tickets issued by parties who should
attempt to set up a lottery in Massachusetts, in direct violation
of its laws, upon a more favorable footing than those which
were without that ingredient of falsity. The fact that the sale
of such tickets was already punishable, as it is by § 3 of the
same chapter of the Gen. Sts., does not preclude a different pen
alty from being imposed for the same acts when alleged with an
additional characteristic. We see no reason, therefore, to qualify
or limit the apparent meaning and application of the language

of the seventh section, which explicitly requires all lottery tickets, offered for sale, to be deemed false, until proved to be not only genuine, but issued by lawful authority, and binding upon the parties who issued them.   Such tickets, issued by parties attempting to set up a lottery in Boston, are not genuine, for they give to the parties who purchase them no such rights as they purport to do.   Their illegality makes them utterly void.   The mere fact of illegality might not sustain the allegation of " false and fictitious."   But, with its consequences upon the rights of the holders, it will justify the statute definition of its own terms.

When, therefore, the offence is charged in the terms of § 6, and the defendant is subject to the 'burden of proof imposed by § 7, he cannot sustain it by proof of a lottery set up in this state contrary to its laws.   But the defendant is not put into this position by the terms of § 7, unless he " has sold or offered for sale," or " received a valuable consideration " for the ticket which is alleged to be " false or fictitious."   These terms are stated in language so full and precise as to leave no room to extend them by construction.   The burden, which is thrown by this section upon the defendant, is contrary to the usual presumptions of law, and we cannot apply it to any case not strictly within the provisions of the statute.   Upon recurring to the original enactment of 1833, we are inclined to think it was not intended to apply this strong presumption against a party who merely had such tickets in his possession, but who had not sold nor attempted to sell them.   As there was no evidence, upon the third indictment, that the defendants had offered the ticket for sale, we are of opinion that they could not be convicted of having that ticket in their possession with intent to sell it, as a " false and fictitious " ticket, merely by force of § 7, and in the absence of evidence either that it was or was not in fact false and fictitious.

As the verdict was rendered, in this case, by direction of the court, upon a different construction of the statute, it must be set aside.

There are also several objections to the sufficiency of the

allegations in the third and fourth indictments. If we rightly understand these objections, they proceed upon the assumption that there are two distinct and different offences, or rather two classes of false and fictitious lottery tickets, intended and described by § 6 of this statute ; one, that of fictitious tickets purporting to be issued from a lottery which is real and genuine ; the other, where the lottery is itself a mere pretence. And it is contended that the allegations of the indictment should set out in which respect the ticket is false ; and, in the one case, set out the lottery by some description ; or, in the other, negative its existence. But, although § 6 does appear to designate offences in both these forms, yet upon careful examination it will be seen that the offence is but one, namely, the selling, or having in possession with intent to sell, a false or fictitious lottery ticket; and the alternative description of " any ticket or share thereof in a fictitious or pretended lottery " is not to add another class of tickets, but to declare that such tickets are intended to be included as " false or fictitious ; " for there immediately follow the words, " knowing the same to be false or fictitious." These words must be referred to the " false or fictitious " ticket, rather than to the " fictitious or pretended lottery." The construction of the sentence indicates this ; and the consideration that otherwise knowledge on the part of the defendant would be essential to the crime only in the case last defined, forbids any other interpretation. Besides this, § 7 declares that any ticket " shall be deemed to be false, spurious or fictitious unless the defendant proves " the existence and legality of the lottery, as well as the genuineness and validity of the ticket. The defendant cannot be entitled, therefore, to a more specific and narrow description of the offence, which would enable him, by dividing, to escape a part of the burden that is imposed upon him by § 7. As a ticket in a " fictitious and pretended lottery " is, by these sections, and may be described to be, a " false and fictitious lottery ticket," this is a sufficient answer to the objection that the two counts in the third indictment are inconsistent with each other and impossible.

To the first and second indictments it is objected that the acts

done, which amount to the setting up of a lottery, should be set forth. But this cannot be necessary. It is never requisite that the indictment should disclose the evidence by which it is to be supported. The acts done, when all combined, only compose the one act of setting up a lottery, which is made an offence by the statute; and we think this offence is sufficiently described by using the words of the statute. *Commonwealth* v. *Clapp,* 5 Pick. 41. *Hopkins* v. *Commonwealth,* 3 Met. 460. *Tully* v. *Commonwealth,* 4 Met. 357. *Commonwealth* v. *McGovern,* 10 Allen, 193. The tests are these: If every allegation may be taken to be true, and yet the defendant be guilty of no offence, then it is insufficient, although in the very words of the statute. *Commonwealth* v. *Squire,* 1 Met. 258. But when, by using the words of the statute, " the act, in which the offence consists, is fully, directly and expressly alleged, without any uncertainty or ambiguity," then it is sufficient so to allege it. *Commonwealth* v. *Welsh,* 7 Gray, 324. *Commonwealth* v. *Ashley,* 2 Gray, 356. " A lottery for money " sufficiently indicates a lottery in which the prizes are to be drawn in money. It is not necessary that the indictment should set forth the number or amount of the several prizes into which the scheme is divided.

Neither is the indictment open to the objection of duplicity, in alleging that the defendants did " set up and promote " a lottery. The offence is the same, whether the lottery was wholly the work of the defendants, or in part only. If the defendants are shown to have participated in any particular in the operation of the enterprise, they are guilty of the whole; and an allegation of the whole does not set out a different nor another offence. *Commonwealth* v. *Eaton,* 15 Pick. 273. *Commonwealth* v. *Twitchell,* 4 Cush. 74.

The question is also submitted whether the defendants can be convicted and sentenced, at the same time, upon all of these indictments. Assuming that the first indictment is for the same lottery in which the ticket, described in the second indictment, was issued, it would seem, at first thought, that the possession of the ticket, with intent to sell, must form a part of the enterprise, and was included in the offence of setting up or promoting

the lottery. But this apparent identity is incidental, and not a necessary one. A man may be guilty of setting up a lottery without having the tickets in his possession for sale; and he may sel. a lottery ticket, or have it in his possession with intent to sell, without the slightest participation in the setting up or promoting of the lottery. He may have purchased or received a ticket from a stranger, and if he offer to sell it afterwards he would be guilty of this offence. Proof of the possession and sale of a lottery ticket, and nothing more, would not sustain the charge of promoting a lottery. The defendants in these cases undoubtedly had the tickets and were selling them in furtherance of the scheme itself; but the fact that they did thereby promote the lottery is not essential, and indeed constitutes no part of the offence of selling lottery tickets, nor of having them in their possession with intent to sell. The two offences have nothing in common which is essential to either. This is perhaps the best test to determine the question of legal identity, which would make a conviction upon one charge a bar to a prosecution upon the other. 1 Stark. Crim. Pl. 323.

The same reasoning will apply to the third and fourth indictments, assuming that the first was found for the lottery corresponding to the tickets described in those two. The considerations already suggested in regard to the sixth and seventh sections are sufficient to show that the allegations of the first indictment, that the defendants did in fact set up the lottery from which the tickets purport to issue, do not preclude the government from prosecuting the sale of such tickets as " false and fictitious."

The result is, that judgment must.be entered upon the verdicts in the first, second and fourth indictments; and in the third the verdict must be set aside.

*N. Richardson & E. M. Bigelow,* for the defendants.

*Reed,* A. G., for the Commonwealth.