JUDGE PETERS
delivered the opinion oe the court:
T. A. Marshall sold and conveyed to C. M. Johnson a house and lot in the city of Lexington, and retained a lien on the property to secure the unpaid purchase money.
Johnson afterwards mortgaged the same-property, with the household goods and kitchen furniture in the house, to R. A. Buckner, to secure a debt which he owed him.
The debt to Marshall was not paid when it matured, and he brought his suit against Charles F. Johnson, the executor of C. M. Johnson, who had in the meantime died, to coerce the collection of his debt by the enforcement of his lien, and made R. A. Buckner, the mortgagee, a defendant.
Buckner answered, admitting the prior and superior lien of Marshall, made his answer a cross-petition against his co-defendant, C. M. Johnson’s executor, and prayed for a foreclosure of his mortgage, and for a sale of so much of the mortgaged effects as would be required to pay his debt.
It seems that a judgment was rendered in the case in favor of Marshall, subjecting the property to sale to, pay his debt, and appointing a commissioner to make the sale; but the judgment is not copied in the record furnished us.
The commissioner reported that on the 6th of August, 1862, he “offered said property, in the decree mentioned,” for sale, and Richard A. Buckner became the purchaser at the price of $6,750.
Afterwards a commissioner was, by an order of the court in some consolidated cases, (the names of the parties to which are not given,) directed to sell the furniture, &c., which order-he proceeded to execute on the 22d of Nov., 1862; and, after *359 naming in his report the articles he sold, áse., states that the chandeliers, or gas fixtures, in the house previously sold, were claimed by R. A. Buckner as fixtures of, and belonging to, the house, and the sale thereof was n ot made on account of that claim; and the question as to whether said chandeliers, &c., passed by the sale of the house, &c., to Bucker was thereupon submitted to the circuit judge, who decided favorably to Buckner, and Johnson’s representatives have appealed.
These chandeliers were purchased and put into the house by Johnson after his purchase from Marshall; but whether before or after the mortgage to Buckner does not appear. They are affixed,by means of screws, to iron pipes let into the walls of the house for the purpose of conducting gas to the burners, and can be removed without injury to the walls or ceiling of the house, or to the pipes to which they are attached; and, whilst'they are used as burners to light up the house, their finish and construction are such as to render them ornamental also; The iron.pipes cannot be taken out without removing a part of the walls through which they pass.
Articles of a personal nature, affixed, to the freehold, are generally denominated fixtures. It will, therefore, be necessary to inquire what kind of annexion confers upon goods the character of fixtures.
Questi'ons. respecting the right to what are called fixtures arise between three classes of persons: L. Between heir and executor; and there the rule obtains with most rigor in favor of the inheritance, and against the right to consider, as a personal chattel, anything which has been affixed to the freehold. 2. Between the executor of a tenant for life and the remainder man or reversioner; and here the right to fixtures is considered more favorably for the executor. 3. Between landlord and tenant; and here the claim to ha.ve articles considered as personal property, is received with the greatest latitude and indulgence. 4. There is still an exception of a broader character in respect to fixtures erected for the purposes of trade.
The strict rule as to fixtures, that applies between heir and executor, applies equally between vendor and vendee and mortgagor and mortgagee. (2 vol. Kents Com., page 411, 12 *360 and 413.) There can be no doubt that, upon the sale of the freehold, fixtures will pass, in the absence of any express provision to the contrary. It has been held in some cases that to give chatties the character of fixtures, and deprive them of that of personalty, they must be so firmly fixed to the realty that they cannot be removed without injury to the freehold from the act of removal, and apart from the subtraction of the thing removed; but, the.better opinion is, however, the other way, and in favor of viewing every thing as a fixture which has been attached to the realty with a view to the purposes for which it is held or employed, however slight or temporary the connection between them. It has accordingly been decided, in a great number of cases, that the machinery of a man-ufactory is to be regarded as apart of the realty, whether it be attached to the body of the building, or merely connected with the other machinery by running bands or gearing which may be thrown off at pleasure and without injury to the freehold. (Notes to Elwes vs. Mawe, and authorities cited, 2 vol. Smith’s Lead. Cases, 249.)
Nor can it be said that actual annexation was so essentially necessary to constitute a fixture, even in the earliest and most technical periods of the common law, as to bear down and overpower all other considerations. The doctrine of heir-looms necessarily implies that chatties may be deprived of their moveable and personal character, and rendered inseparably attendant upon the inheritance, by the force of moral association. It has never been doubted that the keys of a house, or the fences or walls of a farm, are part of the freehold. It was held in Kittridge vs. Wood, (3 New Hamp., 503,) and Parsons vs. Camp, (11 Conn., 525,) that the manure on a farm at the time it was sold vested in the vendee.. And these decisions were followed in Goodrich vs. Jones, (2 Hill, 142,) and the purchaser held to be both entitled to the manure and the fences, although the latter had been detached from the soil. (Ib., p. 251-2.)
These authorities are cited to show that the ancient rule, which treated nothing as fixtures except such chatties as were fastened to the realty and were more or less immovable, has *361 been modified and moulded to suit the improvements in arts and.science of modern times.-
In Fairis vs. Walker, (1 Bail., 540,)-the plaintiff sold and conveyed his plantation to the defendant, on which cotton was grown, and a cotton gin was in a gin house on the premises attached to the gears. The plaintiff brought trover for the gin; but the court held that it was a fixture, and passed with the freehold; saying, as between heir and executor, or vendor and vendee, all things which are necessary to the full and free enjoyment oí the freehold, and in any way attached to it, are held to be fixtures, and pass with it.
In 6 Greenleaf, 157, Justice Weston said: “Modern times have been fruitful of inventions and improvements for the more secure and comfortable use of-buildings, as well as of many other things which administer to the enjoyment of life. Venitian blinds, which admit the air and exclude the sun whenever it is desirable so to do, are of modern use; so are lightning rods, which have become common in this country and in Europe. These might be removed from the building without-damage; yet, as suited and adapted to the buildings upon which they are placed, and as incident thereto, they are doubtless part of the inheritance, and would pass by a deed as appertaining to the realty. In Walker vs. Shannon, (20 Wend., 636,) Justice Cowen, with great labor, reviewed the authorities on this point, and came to the conclusion that the machinery in a woolen factory, being moveable, and not in any manner affixed or fastened to the building- or land, although material to.the performance,of the factory in certain parts of its work, was personal property, as between tenants in common and owners of the fee. The question was decided as if it had arisen between vendor and vendee. But in Voorhis vs. Freeman, (2 Watts & Serg., 117,) the case of Walker vs. Shannon, supra, was referred to and disapproved.
The question whether chatties are to be regarded as fixtures depends less upon the manner of their annexation to the freehold than upon their own nature and their adaptation to the purposes for which they are used. (2 Smith’s Lead. Cases, 251.)
In Lawrence vs. Kemp, (1 Duer, 363,) the question was be *362 tween a landlord and bis tenant. A former tenant had put up some gas fixtures and screwed 70 stools to the floor of the demised building, which he had used as a store room, and failed to remove them during his term. After the building had been demised to another tenant, and while he was in possession, the former tenant entered and removed the gas fixtures and stools which.he had put in the building, and the landlord brought suit against his tenant in possession for the value of these articles, alleging that he had agreed to deliver the store room with the fixtures therein on a named day. The court held that such articles, when placed by a tenant in a demised building during his term, are his property. If not removed by him during the term, they do not, for that reason, cease to be his property, and he may remove them after his term expires without subjecting himself to any damages for such removal, even though he be liable to an action of trespass for an entry on the demised premises.
The rule which governed this case is, that the claim to have such articles considered as personal property is received with the greatest latitude and indulgence; a very different rule from that which prevails between vendor and vendee, as we have before shown, and the difference in the rules governing destroys the analogy in the two cases.
We have shown, authoritatively, as we think, thatthe physical annexation of the articles in controversy'' to the freehold is such as, between vendor and vendee in an ordinary sale without an express reservation of them, would pass them to the vendee. But, in this case, the articles never belonged to Marshall; they were purchased and put up by. Johnson after he purchased the house and lot; and the question is, if Marshall had no lien on them, can Buckner, a purchaser under his sale, to enforce his lien, be permitted to hold them?
The sale of the property was doubtless advertised. Buckner, and others desiringto purchase, attended at the time and place.' They found these articles in their appropriate places, to be used for the purposes for which they were designed. The representatives of Johnson had not removed them, probably because they regarded them as a part of the freehold. *363 There is no proof that Buckner knew that Johnson had placed them there after his purchase. No claim was made to them by Johnson’s representatives or those interested in the property, and no objection made to the sale. Purchasers and strangers, seeing them in their appropriate places, and no objections made to the sale, would regard them as a part of the freehold, and would bid for the property with the belief that the acquisition of it would confer upon them the right^ to these articles, which, from their nature and position, seemed to be incident to and a part thereof, and thereby be induced to bid more than they would otherwise have done.
Buckner, having purchased in good-faith and for a valuable consideration, should take the property with the incidents, and in the condition it was in when he purchased.
Wherefore, the judgment is affirmed.