## DARLING v. WESTMORELAND.

On the question whether a pile of lumber was likely to frighten horses, evidence is admissible to show that horses passing it were or were not frightened by it.

CASE, by Charles Darling against the town of Westmoreland, for an injury caused by defects in a highway. Verdict for the defendants, and motion of the plaintiff for a new trial. The defects alleged by the plaintiff were, a pile of lumber by the side of the road likely to frighten horses, and an insufficient railing of a bridge. His claim was, that his horse was frightened by the lumber as he crossed the bridge, and ran back, and backed off the bridge. One ground of defence was, that the horse was vicious and unsafe, and much evidence was offered on that point on both sides. The plaintiff introduced the testimony of a Mr. Cressy, who testified that he rode past this pile of lumber with a Mr. Fletcher, and he offered to prove by him that Fletcher's horse was frightened by the lumber; but the court rejected the evidence, and the plaintiff excepted.

*Cushing* and *Lane & Healey*, for the plaintiff.

The fact, that other horses were frightened by the same pile of lumber, tends to show that it was dangerous, and so an encumbrance, and also tends to rebut the defendants' claim that the plaintiff's horse was unsafe. But it is said, on the authority of *Hubbard* v. *Concord*, 35 N. H. 52, that this fact cannot be shown, because the attempt to show it raises a collateral issue which the opposite party cannot be expected to be prepared to try.

It seems to us that this objection is entirely unfounded, either in principle or practice.

You may show, in a pauper case, that the defendant town have paid other charges for relieving the same pauper, or other paupers whose settlement depends on the same facts, raising and trying in the first instance one, and in the second two collateral issues. *Thornton* v. *Campton*, 18 N. H. 20; *Hopkinton* v. *Springfield*, 12 N. H. 328; *Canaan* v. *Hanover*, 47 N. H. 215; *Pittsfield* v. *Barnstead*, 40 N. H. 478. You may show that a defendant town, in an action for damages by reason of defective highway, have paid other claims depending upon the same facts, in order to show the town's admission of liability for the alleged defect. *Coffin* v. *Plymouth*, 49 N. H. 173.

You may show that a railroad corporation, in an action for damages by reason of an accident, have paid other claims for damages arising from the same accident, as proof of admission of liability by reason of that accident. *Perkins* v. *Concord Railroad*, 44 N. H. 223.

The question, whether a statement was intended as an admission of

a fact or an offer of compromise, may be submitted to the jury. *Field* v. *Tenney*, 47 N. H. 513.

You may show the facts by which an estoppel is created, thus raising a collateral issue. See cases Morrison's Digest 322, *et seq.*

You may submit to a jury the determination of a fact on which the interest of a witness depends. *Dearborn* v. *B. C. & M. Railroad*, 24 N. H. 179; *Johnson* v. *Kendall*, 20 N. H. 304; *Walker* v. *Sawyer*, 13 N. H. 191; *Rich* v. *Eldredge*, 42 N. H. 153.

The whole doctrine of circumstantial evidence depends on the same principle, viz., the proof by collateral issues of collateral facts from which the existence of the main fact is inferred.

That always seemed to us a very queer freak of judicial squeamishness, which took two or three instances, occurring in actions against towns, out of the operation of what seems to be a universal rule.

It should be remarked, that in all these cases the doctrine is reiterated, that all the circumstances may be laid before the jury, in order to enable them to determine the exact quality of the collateral fact proved, and the inference which may justly be made.

As to what is said about the party not being prepared to try a particular fact, the answer is, that the party is expected to be ready to try all the facts pertinent to the case; that the statute, which compels parties to testify against themselves, excuses them from disclosing the names of their witnesses or showing their papers,—thus aiding and encouraging parties as much as possible in keeping their cases secret, and in fact surprising their antagonists. If a party is really surprised, there is always a remedy by delay until he can be prepared to meet the unexpected fact.

*Wheeler & Faulkner*, for the defendants.

1. With such respectable authorities to support the decision in *Hubbard* v. *Concord* as Greenleaf, Starkie, Phillipps, the supreme court of Massachusetts, and the uniform ruling at *nisi prius* of the court of this State, for a period of at least twenty years prior to the decision in *Hubbard* v. *Concord*, any argument in support of the ruling here excepted to would seem surperfluous. What seems to the learned counsel for the plaintiff " a very queer freak of judicial squeamishness," will be found to be merely judicial recognition of a rule of evidence so well settled as properly to be styled elementary. 2 Stark. Ev. 312; 1 Grenl. Ev., sec. 52; 1 Phillipps Ev. 276; *Standish* v. *Washburn*, 21 Pick. 237; *Collins* v. *Dorchester*, 6 Cush. 396; *Aldrich* v. *Pelham*, 1 Gray 510; *Kidder* v. *Dunstable*, 11 Gray 342; *Swamscot Machine Co.* v. *Walker*, 22 N. H. 457; *Concord Railroad* v. *Greely*, 23 N. H. 237; *Foye* v. *Leighton*, 22 N. H. 71.

2. The distinction between the case at bar and all that class of cases cited by the plaintiff is obvious. An admission of the plaintiff's cause of action by the party sought to be charged, or of the latter's liability, has never been considered a *collateral* fact. In this case, no

such evidence was offered ; no evidence of any admission by the defendants: at best, it was evidence of an admission or a declaration by Fletcher's *horse*, that the alleged obstruction looked frightful to *him*, and, as is suggested to us, not even " a declaration under oath," at that.

Doe, J. One question of fact was, whether the pile of lumber was likely to frighten horses. *Winship* v. *Enfield*, 42 N. H. 197 ; *Chamberlain* v. *Enfield*, 43 N. H. 356 ; *Bartlett* v. *Hooksett*, 48 N. H. 18. On this question, the plaintiff had the affirmative and the burden of proof. He had a right to prove that the pile was likely to frighten horses, because he would fail in this part of his case unless he did prove it. For all the purposes of this case, nothing could be more irrelevant than a pile not likely to frighten horses. It was not the pile, but the character of the pile—its capacity for frightening horses—that the plaintiff complained of. It was possible for some competent evidence on this subject to exist, to be found, and to be given to the jury. It was not necessary that the plaintiff's evidence on this point should tend to prove all the other points of his case. It was not necessary that his evidence on this point should tend to prove that the way was a highway, or that the railing was insufficient, or that the town had or ought to have had notice of the unsuitableness of the way for the travel thereon, or that the plaintiff was injured, or ·that he was in the exercise of reasonable care. The evidence to prove several independent propositions or distinct facts may be of different kinds, and drawn from different sources. *Bridge* v. *Eggleston*, 14 Mass. 245 ; *Foster* v. *Hall*, 12 Pick. 89, 99, 100 ; *Blake* v. *White*, 13 N. H. 267 ; *Hale* v. *Taylor*, 45 N. H. 405, 407 ; *Delano* v. *Goodwin*, 48 N. H. 203, 206.

Another point of the plaintiff's case was, that his horse was frightened by the lumber. How could the plaintiff prove that? .By witnesses testifying that his horse appeared to be frightened, or that, in their opinion, he was frightened, or (to omit surperfluous words, and speak in that positive manner in which witnesses would generally testify on such a subject) that he was frightened. *Whittier* v. *Franklin*, 46 N. H. 23. And the fright of Fletcher's horse could be proved in the same way. The only question of law in this case is, whether the fright of Fletcher's horse, when proved, would be a fact of any relevancy and materiality as evidence upon any question of fact in controversy. If the only question of fact in controversy were, whether the plaintiff's horse was frightened by the lumber, that question might involve the question of the capacity of the lumber to frighten him, and that might involve the secondary question of its capacity to frighten other horses. But, in this case, the two primary questions arose, whether the lumber was likely to frighten horses, and whether it did frighten the plaintiff's horse. Was it of such a character, quality, and condition, that it could, and probably or manifestly would, be an object of terror to horses in general, or horses of ordinary gentleness or of average skittishness ? That was one question. Was the plaintiff's horse frightened by it ? That was another and very different question. Each of these questions

was original, and independent of the other. Evidence might be intro-duced on either of them, without any reference to the other. And it is to be specially observed that the former question is, not whether the lumber was likely to frighten Darling's, or Fletcher's, or any other par-ticular horse, but whether it was likely to frighten horses.

Was the fright of Fletcher's horse competent evidence on the ques-tion whether the lumber was likely to frighten horses? No one doubts that the fright of the plaintiff's horse was competent evidence on that question : and, ordinarily, where evidence of one experiment is admis-sible to show the character of inanimate matter, evidence of two experiments of the same kind is not inadmissible. There is nothing in the facts of the reserved case showing any peculiarity in the plaintiff's horse that should make his terror a conclusive test of the terrifying character of the pile. For aught that appears upon the facts, he may have been very inferior to Fletcher's horse as an animal to make a fair experiment with for the purpose of testing the character of the pile. On the independent and general question of the horse-frightening capacity of a certain pile of lumber, what rule of law considers the fright of Mr. Darling's horse as important, and disregards the fright of Mr. Fletcher's horse as of no consequence at all? If the ability of the pile to frighten horses rendered the highway " unsuitable for the travel thereon," and the town were in fault, an indictment would lie as well as this action. Gen. Stats., ch. 68, secs. 1, 2 ; ch. 69, sec. 1. And, in the trial of such an indictment (*King* v. *Pease,* 4 B. & Ad. 30), the fright of Fletcher's horse could not be excluded while the fright of Darling's was received. In the civil and in the criminal case, one fact to be proved, namely, the character of the pile in respect to its power of frightening horses, is precisely the same ; and, in each case, on that point, there is no more reason for admitting the fright of Darling's horse and rejecting that of Fletcher's, than there is for admitting that of Fletcher's and rejecting that of Darling's. The only way to reject one, by the application of an absolute rule of law, is to reject both, and to hold that the jury should have been instructed (contrary to the uni-versal practice) that the fright of Darling's horse was no evidence that the lumber rendered the road unsuitable for the travel thereon. The terrifying quality of the pile being the question, the terror of Fletcher's horse is no more collateral than the terror of Darling's. Should they both be excluded from the consideration of that question? And should the evidence that the plaintiff's horse was vicious and unsafe on other occasions also have been excluded?

If the question were, whether the lumber was capable of floating in water, or making a good fire, or being sawed or cut or planed in a spe-cific manner, or supporting horses and wagons passing over a bridge, there could be no legal objection to the trial of an appropriate experi-ment upon it in the presence of the jury, or to the evidence of experi-ments that had been tried elsewhere. And there is no reason, outside of the technical rules of the law, why its ability to frighten horses should not be tested out of court, and proved in court in the same

manner. When we want to know whether a certain horse is skittish or is capable of a certain speed, whether a certain substance is poisonous and destructive of animal or vegetable life, whether certain materials are of a certain strength, whether a certain field or a certain kind of soil is likely to produce a certain kind or amount of crop, whether a certain man or brute or machine is likely to perform a certain kind or amount of work, or whether anything can be done or is likely to be done, one way is to speculate about it, and another way is to try it. The law is a practical science, and when it is appealed to to direct what means shall be used to find out whether a certain pile of lumber is likely to frighten horses, if any one asserts that, on this subject, the law prefers speculation to experience, abhors actual experiment and delights in guesswork, the person advancing such a proposition takes upon himself the task of maintaining it upon some legal rule, distinctly stated by him and well established by the authorities. Such a proposition is not sustained by the reason of the law. It is sustained by nothing that can be justly called a principle. By what technical rule, at war with reason and principle, is it supported?

The only rule relied upon to exclude experimental knowledge in such a case as this, is the rule requiring the evidence to be confined to the issue,—that is, to the facts put in controversy by the pleadings, prohibiting the trial of collateral issues,—that is, of facts not put in issue by the pleadings, and excluding such evidence as tends solely to prove facts not involved in the issue. This rule merely requires evidence to be relevant. It merely excludes what is irrelevant. It is a rule of reason, and not an arbitrary or technical one, and it does not exclude all experimental knowledge. A fact as relevant, and as directly involved in the issue of guilty or not guilty, between these parties, as any fact in controversy, was, the likelihood or probability of the lumber frightening ordinary horses. There was nothing collateral, —that is, nothing irrelevant in that. To that point the fright of Fletcher's horse was no more collateral than the fright of Darling's. And the combined fright of both horses was no more collateral, in a legal sense, than would be the combined results of any two experiments that could be tried to test the frightening power of the lumber. The rule confining the evidence to the issue, and excluding evidence bearing solely upon collateral issues,—that is, irrelevant issues, issues not raised by the pleadings,—has not been relied upon to exclude all evidence of all experiments in all cases. But it is sometimes inadvertently relied upon, in cases of this kind, where the plaintiff avers damage caused by the dangerous character of something for which the defendant was responsible, to admit the plaintiff's experience, on the occasion of his alleged injury, as competent evidence of the character of the thing complained of, and to exclude the experience of others equally relevant and equally material on that point. There are a few cases which go to show, as matter of authority, that, on the question whether this pile of lumber was calculated to frighten horses, while the competency of the experiment with Darling's horse is not to

be questioned, the experiment with Fletcher's is incompetent. The doctrine of those cases, applied to this case, would be founded on the error of taking it for granted that Darling's experiment is the point in issue, and holding Fletcher's to be collateral to Darling's, when the frightening power of the lumber is a point in issue; and, to that point, Fletcher's experience is no more collateral than Darling's, and neither of them is collateral in any legal sense.

The error which has occurred, in some cases, is a misapplication of the rule which excludes irrelevant evidence, and is easily accounted for.

1. The plaintiff's experience, on the occasion of his alleged injury, has been a fact first and necessarily received as competent evidence on other points than the character of the thing complained of: being in evidence on other points, it has been considered, without objection, as evidence on that point: but the experience of other persons, equally relevant on that point, has seemed to have an objectionable appearance, because it did not come into the case in the same unobjectionable way as that by which the plaintiff's experience was introduced, and because it was collateral to some point to which his was not collateral.

2. The rule, requiring evidence to be relevant, is so often spoken of in the books as hostile to collateral issues, without a very explicit accompanying definition of the term " collateral," that a vague notion of the rule excluding something besides irrelevant evidence would be likely to open the way for a definite and serious mistake. And the confusion resulting from such a notion might be increased by other legal uses of the term, as in " collateral descent or succession," which is not always irrelevant, and in " collateral security," which conveys no idea of irrelevancy. It would seem to be a sufficient reason for the rule confining the evidence to the point in issue,—in other words, excluding irrelevant evidence,—that a judgment is the object of a trial: a judgment cannot be rendered on the finding of any other fact than that put in issue by the pleadings; and the finding of useless facts on which no judgment can be rendered, is not a duty with which the tribunal is charged. To set aside a verdict for the admission of evidence not confined to the issue, the party objecting must have been prejudiced by it: the evidence must have been not only irrelevant, but also calculated to influence the jury to his injury. But irrelevant evidence, not injurious to either party, should be excluded, because it cannot aid in the decision and settlement of the point in issue; because it has no tendency to produce that judgment which is the sole object of the trial: if it would be injurious it should be excluded, because it cannot legally aid in the rendition of the judgment, and, therefore, cannot answer the only purpose for which evidence is received. That is reason enough for its exclusion; and some of the other reasons sometimes given are calculated to convey an indefinite and confused if not a wrong impression of the object and meaning of the rule.

3. The tendency to error has been aggravated by an exception (which is a peculiarity of precedents of English origin) excluding relevant

evidence of a defendant's general and notorious disposition to commit such crimes or torts as that with which he is charged, and his habitual commission of crimes or torts of a like kind as proof of such disposition. That such evidence is relevant, the law acknowledges by receiving, in criminal cases, and in some civil cases (1 Greenl. Ev., secs. 54, 55, *Wood* v. *Gale*, 10 N. H. 247), evidence of a defendant's good character in his favor, and allowing such evidence to be rebutted, and by receiving evidence of the character of witnesses and of other persons (1 Greenl. Ev., sec. 54). The exclusion of such evidence is a plain departure from the general principle which admits relevant and material evidence. There is reason to believe that this exception originated in a usurpation of legislative power by English judges, led by a merciful impulse to mitigate the cruelty of a bloody criminal code by throwing obstacles in the way of its operation.

" It is a melancholy truth, that among the variety of actions which men are daily liable to commit, no less than a hundred and sixty have been declared by act of parliament to be felonies without benefit of clergy ; or, in other words, to be worthy of instant death. So dreadful a list, instead of diminishing, increases the number of offenders. The injured, through compassion, will often forbear to prosecute ; juries, through compassion, will sometimes forget their oaths, and either acquit the guilty or mitigate the nature of the offence ; and judges, through compassion, will respite one half of the convicts, and recommend them to the royal mercy." 4 Bl. Com. 18, 19. " The punishment of high treason in general is very solemn and terrible. 1. That the offender be drawn to the gallows, and not be carried or walk ; though usually (by connivance, at length ripened by humanity into law) a sledge or hurdle is allowed, to preserve the offender from the extreme torment of being dragged on the ground or pavement." 4 Bl. Com. 92.

Under a criminal code of one hundred and sixty capital offences, courts were exposed to a temptation, greater than they were able to resist, to strain the law, and moderate its barbarity by the introduction of anomalies and logical deformities, *in favorem vitæ*, in the interest of humanity. So far did they go, in overturning elementary doctrine, that, on a convict's application, they reversed the judgment against him for a mistake made in his favor. *McKean* v. *Cutler*, 48 N. H. 370, 375 ; *Stevens* v. *Commonwealth*, 4 Met. 360, 371 ; *Reg.* v. *Hartnett*, Jebb, C. C. 302 ; 1 Ben. & H. Ld. C. C., *note*, 1st ed. Whether a judgment of death should be reversed because the sentence did not require the dissection and anatomization of his body after execution, the twelve judges were equally divided in opinion ; but the six who thought the omission was not a fatal defect in the judgment, came to that conclusion upon the construction of a particular statute, and not upon any general principle. *Rex* v. *Fletcher*, Russ. & Ry. 58. The compassion excited by the severity of English statutes is enough to account for the strictness of some of the exceptions of criminal pleading and evidence which have been allowed to outlive the cause and reason of their existence.

Arbitrary in their nature, originally enacted by judicial legislation *in favorem vitæ*, wholly based upon the sacredness of human life so brutally violated by acts of the British parliament, and specially designed as a partial nullification of those acts, they are of a piece with the illegal use of the sledge or hurdle " by connivance, at length ripened by humanity into law ;" and they are, in this State, at the present time, as much out of place as that British mode of conveying traitors to the gallows. The influence of such illegal exceptions, coming at length to stand for legal examples in constant use, has been felt beyond the practice in criminal cases, and has engendered confusion in the body of English law inherited by us. Why they have not ceased by operation of the common law of limitations, *cessante ratione legis cessat ipsa lex*, and why they are adhered to, though not adapted to our circumstances *(Lisbon* v. *Lyman*, 49 N. H. 553, 582), may be explained by the force of the habit of following English precedent. There is no pretence that an exclusive right to introduce such innovations, and forever prohibit the innovation of abandoning them, was vested in the courts of former times. It is no departure from legal principle not to continue a course that was a mere nullification of the temporary law of parliament, and an unconstitutional usurpation that has now lost even its sole excuse of obedience to the higher law of humanity. The conflict of laws having ceased, the temptation of courts to nullify the lower law which they are sworn to enforce has passed away. And however much reverence may remain for ancient innovations in behalf of human life under circumstances no longer existing, and however strong may be the inclination derived from that reverence and from habit to adhere to the practice of excluding evidence of human character furnished by experience, the extension of that practice to the rejection of experimental knowledge of the character of inanimate matter ought to stop.

4. Another cause of confusion is the mixture of law and fact, and the lack of a distinction, lucidly and emphatically expressed, between what is matter of strict law, and what is matter of judicial discretion. Judicial discretion, in its technical legal sense, is the name of the decision of certain questions of fact by the court. *Bundy* v. *Hyde*, 50 N. H. 116, 120. And a close attention to the difference between fact and law, and the difference between an exercise of judicial discretion (unfortunately so called) and a decision of a question of law, will remove much of the obscurity in which the subject of relevancy of evidence has been involved.

" The pleadings at common law are composed of the written allegations of the parties, terminating in a single proposition, distinctly affirmed on one side and denied on the other, called the *issue*. If it is a proposition of fact, it is to be tried by the jury upon the evidence adduced. And it is an established rule, which we state as the FIRST RULE governing in the production of evidence, that the *evidence offered must correspond with the allegations, and be confined to the point in issue*. This rule supposes the allegations to be material and necessary." 1

Greenl. Ev., sec. 51. " It is not necessary, however, that the evidence should bear *directly* upon the issue. It is admissible if it *tends* to prove the issue, or constitutes a link in the chain of proof, although alone, it might not justify a verdict in accordance with it." 1 Greenl. 'Ev., sec. 51, *a*. " This rule excludes all evidence of *collateral facts*, or those which are incapable of affording any reasonable presumption or inference as to the principal fact or matter in dispute; and the reason is, that such evidence tends to draw away the minds of the jurors from the point in issue, and to excite prejudice, and mislead them; and, moreover, the adverse party, having had no notice of such a course of evidence, is not prepared to rebut it. * * * This rule is adhered to, even in the cross-examination of witnesses,—the party not being permitted, as will be shown hereafter, to ask the witness a question in regard to a matter not relevant to the issue, for the purpose of afterwards contradicting him." 1 Greenl. Ev., sec. 52. " The reasons of this rule have been already intimated. If it were not so, the true merits of the controversy might be lost sight of in the mass of testimony to other points, in which they would be overwhelmed; the attention of the jury would be wearied and distracted; judicial investigations would become interminable; the expenses might be enormous; and the character of witnesses might be assailed by evidence which they could not be prepared to repel. It may be added, that the evidence not being to a material point, the witness could not be punished for perjury, if it were false." 1 Greenl. Ev., sec. 448. " In cross-examinations, however, this rule is not usually applied with the same strictness as in examinations-in-chief; but, on the contrary, great latitude of interrogation is sometimes permitted by the judge, in the exercise of his discretion. * * * But it is a well settled rule, that a witness *cannot be cross-examined as to any fact, which is collateral and irrelevant to the issue, merely* for the purpose of *contradicting him* by other evidence, if he should deny it, thereby to discredit his testimony." 1 Greenl. Ev., sec. 449.

Such an explanation of the law as that contained in these extracts from Greenleaf is less satisfactory and useful than it would be if the distinction between the law and the fact of the subject were more clearly presented.

In *State* v. *Knapp*, 45 N. H. 148, 149, 154, " There was considerable evidence tending to show that respondent was, at the time of the alleged rape, and, for the last fifteen years or more, had been, a man of more than ordinary strength. It was in evidence that he had taken a barrel of flour up in his hands before him and carried it several rods, and then down several stairs or steps into a cellar; also, that he had, within a few years, carried a barrel of sugar some ten rods on his shoulder, and then set it down on a platform; and of his putting one or more Frenchmen out of his tavern-house in Warren, and the circumstances under which it was done. One Getchel testified that he was present on both occasions, and saw Knapp carry the barrel of flour and of sugar; and he was allowed to state, subject to defendant's exception,

at Knapp ' seemed to carry them easily.' One Glazier, a witness for he State, was allowed to state, subject to defendant's exception, that about fifteen years ago he had an encounter or contest with defendant at a town-meeting at the meeting-house in Haverhill, which he describ- d, in which Knapp overcame his strength and pushed him (the witness) through the aisle of the meeting-house. Witness also testi- fied that he had lifted upon scales with others the last fall, upon a trial of strength, and stated the amount he was able to lift in that way. He also testified that he should call Knapp a very active man; that he had seen him load wood upon the cars, and had assisted him one day in loading three cars of wood. One Whicher was allowed to state, subject to the defendant's exception, that he had a scuffle with Knapp some six or seven years ago, and to describe it, in which he said that Knapp was too much for him. Witness also stated his own weight at 165 or 170 pounds, and was allowed to state, as tending to show his own strength, how much he had lifted upon a trial of strength with others, some nine years ago. One Eben Swain was allowed to state, subject to defendant's exception, that one year ago last fourth of July there was a scuffle at the house on the top of Moosehillock, in which some men were making disturbance, and that Knapp, being called on by the keeper of the house to assist him, put one of the men engaged in making the disturbance out of the house, describing the man, and the manner in which he was put out."

The court, overruling these exceptions, said,—" The testimony of Glazier and others, as to the exhibitions of strength by respondent in his encounters with others, we think was admissible. It is true that the strength put forth on those occasions was not capable of exact measurement, as in the case of raising a known weight; but it might, nevertheless, afford better means of judging of his capacity of over- coming such resistance as the prosecutrix might have offered, espe- cially when the size and strength of the persons with whom he strug- gled was shown. Of course, such testimony would not show respon- dent's exact strength, but it might tend legitimately to show that he possessed ordinary or more than ordinary strength; and the court could not say that to make out either would not be material. How far back the parties should be allowed to go, in the introduction of such testimony, is within the discretion of the judge who tries the cause."

In the trial of that case, the judge, in the exercise of what is called judicial discretion, allowed the parties to go back fifteen years; and if he had allowed them to go back sixteen years, or only fourteen, no question of law would have arisen as to the proper length of time. During a period of fifteen years in the life of an active man, his exhi- bitions of strength or weakness might furnish several thousand issues that would be collateral in a certain sense. But evidence of the de- fendant's strength, shown by experiment, was relevant, and not collat- eral, in the legal sense, because, although it might be rebutted by other evidence of various kinds, it tended to show whether he could commit the crime of which he was accused, and, therefore, bore upon one

branch of the question whether it was likely he had committed it. The general relevancy of that class of evidence was matter of law. But how far back in the history of his life it was advisable to go for experimental knowledge of his strength was a question of fact, to be determined upon a variety of considerations, some of which are erroneously given in the books as reasons for the exclusion of irrelevant or collateral evidence as a matter of law. The decision of this question of fact was, in the peculiar and technical language of the law, an exercise of judicial discretion. " What are the boundaries, as to distance of time and locality, between that which may shed some light upon the issue, and that which is too remote to be useful," must often be a question of fact for " the judge who tries the cause to determine, under the circumstances of the particular case," " and no positive rule can be laid down" for the decision of such a question. *Cross* v. *Wilkins,* 43 N. H. 332, 334 ; *Pomeroy* v. *Bailey,* 43 N. H. 118, 125 ; *Kelsea* v. *Fletcher,* 48 N. H. 282, 284 ; *Holyoke* v. *G. T. Railway,* 48 N. H. 541, 546.

When a trial is likely to be unreasonably protracted by a great number of witnesses impeaching or sustaining the character of other witnesses, the evil is not remedied by any principle of law prescribing the exact number. Many evils of that kind must necessarily be avoided by the judge determining, as a matter of fact, upon the circumstances of the case, where the line of reasonableness is. As to the number of experiments or experiences on many points, collateral in a certain sense, but relevant in the legal sense, it is impossible in the nature of the case for a limit to be fixed as a matter of law. But it does not follow that the law excludes all evidence of which it cannot measure a reasonable quantity.

In *State* v. *Knapp,* proof of the defendant's strength exhibited in his encounters with other people being relevant, evidence of the strength of those other people was relevant, and was admitted. And, as his strength could be shown by the result of his struggles with others, as well as by his lifting a certain number of pounds, so their strength could be shown by the result of their struggles with others, and of these others with others still, and so on indefinitely. How far it would be proper to go in that direction, would be a question of fact. Of whatever degree of remoteness such evidence might be, it would be theoretically and strictly relevant, even if practically worthless.

" Arguments upon evidence are generally arguments from effects to causes ; and in proportion as the number of possible causes of a given effect increases, the force of the argument is diminished. It is impossible to fix the precise point at which the argument becomes so weak as not to be worth noticing. One reason why little has been done towards fixing such a point is, that unless evidence is very strong it is not worth while either to bring it forward or to object to its being given. Hence, many things are given in evidence which might perhaps be excluded, and many things are omitted which might perhaps be given in evidence." J. F. Stephen Cr. Law 307. Another reason why little has been done to fix such a point is, the mixture of law and fact, the confounding of remoteness of kind with remoteness of degree, and the

want of a broad distinction between what can be settled as a question of law by a general rule, and what should be settled as a question of fact by the circumstances of each case. *Standish* v. *Washburn*, 21 Pick. 237.

If, on the question of the defendant's strength, in *State* v. *Knapp*, the State had offered evidence of his having often committed, upon various persons, the crime of which he was accused, such evidence would have been quite as relevant in kind, quite as free from the objection of being collateral in quality, and much more pertinent and material in degree, than the proof of his carrying a barrel of flour or sugar, or putting Frenchmen out of his tavern, or pushing Glazier through the aisle of a meeting-house at a town-meeting, or putting a disorderly man out of a house on the top of Moosehillock mountain on the fourth of July. But if there had been any such evidence, it would not have been offered, because it is understood that such evidence is incompetent. It is sometimes erroneously supposed that such evidence is excluded because it is collateral. The true reason seems to be, the exception (established by ancient English, and adopted without due consideration by modern American authorities) which excludes evidence of a prisoner's character and disposition for the commission of such a crime as that alleged in the indictment on which he is being tried, and the fact that, although the courts who introduced the exception might trust themselves to weigh evidence of other crimes, solely on the question of physical strength or other question on which it might be competent, they would not trust juries. And yet, juries have been trusted in such matters. *State* v. *Wentworth*, 37 N. H. 196, 211 (where it is held that the commission of other crimes like the one charged, showed that the defendants " had the strength and ability " to commit the crime alleged in the indictment) ; J. F. Stephen Cr. Law 308. Whether the authorities can or cannot be reconciled ; whether the exception, excluding relevant evidence of character, did or did not originate in the compassionate inclination of courts to nullify temporary statute provisions of capital punishment for one hundred and sixty " actions which men are daily liable to commit; " and whether the exception should or should not be extended from the character of men to the character of brutes, or to any case where human life is not at stake *(E. Kingston* v. *Towle*, 48 N. H. 57, 65, *Wilbur* v. *Hubbard*, 35 Barb. 303, *Scribner* v. *Kelley*, 38 Barb. 14, *Todd* v. *Rowley*, 8 Allen 51),—it is evident that the exception, not being sufficiently emphasized as an exception and a very peculiar one, has produced much confusion by seeming to countenance the idea that the law has an antipathy against experimental knowledge in general.

5. The very few authorities, tending to sustain the exclusion of the fright of Fletcher's horse in this case, are based upon the authority or the reason of the decision in *Collins* v. *Dorchester*, 6 Cush. 396, and two other Massachusetts cases which rest upon that case. In this State the weight of such authorities is much less than it would be if our general doctrines of the highway liability of towns were more in harmony with those of Massachusetts than they are. There is unfor-

tunately such a difference, that, on this subject, we cannot avail our-selves of the great aid which we derive from the Massachusetts reports on other subjects. Perhaps the difference is decreasing, but it has been very marked. *Howard* v. *N. Bridgewater*, 16 Pick. 189; *Shep-ardson* v. *Colerain*, 13 Met. 55; *Stanton* v. *Springfield*, 12 Allen 566; *Nason* v. *Boston*, 14 Allen 508; *Luther* v. *Worcester*, 97 Mass. 268; *Stone* v. *Hubbardston*, 100 Mass. 49; *Gilbert* v. *Roxbury*, 100 Mass. 185; *Billings* v. *Worcester*, 102 Mass. 329; *Stickney* v. *Salem*, 3 Allen 374; *Blodgett* v. *Boston*, 8 Allen 237; *Hamilton* v. *Boston*, 14 Allen 475; *Fogg* v. *Nahant*, 98 Mass. 578; *Babson* v. *Rockport*, 101 Mass. 93; *Southworth* v. *O. C. & N. R. Co.*, 105 Mass. 342; *Drake* v. *Lowell*, 13 Met. 292; *Hixon* v. *Lowell*, 13 Gray 59; *Day* v. *Milford*, 5 Allen 98; *Jones* v. *Boston*, 104 Mass. 75.

So different are the views prevailing in the two States, that, in such cases as the present, it is held in Massachusetts that an object in a highway outside of the travelled path, likely to frighten horses, is not, on that account, a defect. *Keith* v. *Easton*, 2 Allen 552; *Kingsbury* v. *Dedham*, 13 Allen 186; *Horton* v. *Taunton*, 97 Mass. 266; *Cook* v. *Charlestown*, 98 Mass. 80.

The three Massachusetts cases, cited to sustain the ruling in this case, must be considered in connection with other Massachusetts de-cisions which hold that, on the question whether the town could have removed certain ice from a sidewalk by the use of reasonable means, the plaintiff may show that, in the vicinity, ice had been removed from the sidewalk with a shovel (*Shea* v. *Lowell*, 8 Allen 136), and that the town may show that other roads were like the road complained of " as bearing upon the question of ordinary care " (*Raymond* v. *Lowell*, 6 Cush. 524, 531, *Packard* v. *New Bedford*, 9 Allen 200), but not as bearing on the question whether the road complained of was safe and convenient (*Kidder* v. *Dunstable*, 11 Gray 342).

A consideration, substantially disposing of the very few authorities that have any considerable tendency to sustain the ruling in this case, is, that *Collins* v. *Dorchester*, on which the others are based, is no au-thority for the exceptional doctrine it has been supposed to establish. That case being no foundation for the others, and they having no other foundation, they all fall together. In that case, " the highway in ques-tion passed through a marsh, and was made smooth and passable for the width of at least thirty-one feet; and, on each side, at the edge of and along the road, there was a row of posts about six feet apart, ex-tending on each side for twenty rods or more, which had been stand-ing for many years. The plaintiff drove his chaise against one of the posts, so that one wheel passed outside of and locked upon the post; and this accident was the occasion of the injury complained of. It appeared that two or three of the posts, at about the place where the accident occurred, were broken down or removed. The alleged defect was the want of a railing at the place where the accident occurred. * * * The plaintiff * * * proposed to prove by one Sprague, that, before the happening of the accident complained of, the witness

was riding over the same road, at or near the same place, and under similar circumstances, and that an accident similar to the one in question then occurred, which was caused by the same alleged defect, and without any neglect or fault on the part of the witness." The judge ruled that this evidence was not competent " for the purpose of proving the way defective." The whole of the decision of the question raised by that ruling was this : " The testimony of Sprague, that he, before the injury complained of by the plaintiff, received a similar injury, at or near the same place, without any negligence on his part, was not competent for the purpose of proving that the road was defective at the time and in the place of the plaintiff's injury. It was testimony concerning collateral facts, which furnished no legal presumption as to the principal facts in dispute, and which the defendants were not bound to be prepared to meet. *Standish* v. *Washburn,* 21 Pick. 237 ; 2 Stark. Ev., 381 *et seq.;* 1 Greenl. on Ev., secs. 52, 448. Even a judgment recovered by Sprague against the defendants for damages sustained by him by reason of a defect in the road, would not be admissible in evidence in favor of the plaintiff."

In that case, a sufficient railing on the posts would have prevented the plaintiff's wheel going outside of the post with which his carriage came in contact. The question was, whether, in the undisputed condition of the road, the absence of such a railing, exposing travellers to the danger of their wheels going outside of and locking upon the posts, was a defect. No experiment or experience of the plaintiff, or Sprague, or any one else, was necessary to show that the posts were capable of being run against. It does not appear that any such experiment or experience would assist the judgment of the jury on the question whether, in the undisputed condition of the road, the posts were likely to be run against. Such a case is no authority for holding that the disputed horse-frightening capacity of a certain pile of lumber cannot be shown by experience.

In *Aldrich* v. *Pelham,* 1 Gray 510, it was held that the case could not be distinguished from *Collins* v. *Dorchester,* and that consequently the disputed width of a road could not be shown by a measurement of it made with carriages, although it might be shown by some other kind of measurement. In *Kidder* v. *Dunstable,* 11 Gray 342, it was held, as a point settled by *Collins* v. *Dorchester* and *Aldrich* v. *Pelham,* that the disputed width of a path could not be shown by a measurement of it made with sleighs.

In *Collins* v. *Dorchester,* an experiment was not necessary to prove an undisputed fact. In *Aldrich* v. *Pelham* and *Kidder* v. *Dunstable* it was considered settled by *Collins* v. *Dorchester* that a disputed fact could not be proved by experiment. In this view of the unsound foundation of authorities tending to sustain the ruling in this case, they cannot be regarded as of great weight.

In an action on a note alleged to have been given for money loaned, the defence being that the note is a forgery and the loan a fiction, evidence tending to show the payee's want of means to make the loan,

and evidence tending to show that the payer was a borrower of money, is admissible.  *Wiggin* v. *Plumer*, 31 N. H. 251, 255, 268, 269, 270; *Demeritt* v. *Miles*, 22 N. H. 523, 528; *Angier* v. *Ash*, 26 N. H. 99, 110.  On the question what price A agreed, by an express verbal contract, to pay B for drawing certain lumber over a particular route, the prices paid by other people to other people for similar services are admissible, as bearing upon the probabilities of the case.  *Swain* v. *Cheney*, 41 N. H. 232.  On the question whether a building was set on fire by sparks from particular locomotive engines, evidence that sparks were thrown from other engines may be competent.  *Boyce* v. *Cheshire Railroad*, 43 N. H. 627.  A surgeon undertakes to treat his patients with a reasonable degree of skill, and, in an action against him for malpractice, upon the question of skilful or unskilful treatment, evidence is admissible to show what degree of skill he was possessed of,— in other words, to show his surgical ability.  *Leighton* v. *Sargent*, 27 N. H. 460.  At the second trial of that case, "The defendant proposed to offer evidence of surgical cases treated by him, as showing his skill.  But these cases having occurred a little more than two years after the time of the treatment of the plaintiff's case, and eight or ten months after the commencement of this suit, the court, therefore, rejected the evidence."  Upon an exception taken to the exclusion of that evidence, the decision was this : " The evidence proposed to be given of cases in surgery actually treated by the defendant, as showing his skill, was properly rejected.  The cases occurred two years after the case in question, and, even if he were then as skilful as the rule of law requires, it would not legitimately show that he was so skilled at the date of the act complained of in this case.  Skill, possessed two years subsequently to the time of the act complained of, does not presuppose a like degree of skill at its date."  The question of admitting the evidence turned on the point of time, and was a question of fact.

We have carefully examined such authorities as our attention has been called to, some of the most important of which are *Hubbard v. Concord*, 35 N. H. 52 (where evidence of other people slipping on the ice complained of, was, on the authority of *Collins* v. *Dorchester* and *Aldrich* v. *Pelham*, held incompetent by one of the two judges sitting in the case, the judge who delivered the judgment yielding his own opinion to avoid the consequence of an equal division, and in deference to his senior associate by whom the point was not thoroughly examined, and where their attention was chiefly occupied by " other more important question ") ; *Hubbard* v. *A. & K. R. Co.*, 39 Me. 506 ; *Hill* v. *P. & R. R. Co.*, 55 Me. 438 ; *Kent* v. *Lincoln*, 32 Vt. 591 ; *Walker* v. *Westfield*, 39 Vt. 246 ; *House* v. *Metcalf*, 27 Conn. 631 ; *Bailey* v. *Trumbull*, 31 Conn. 581, 584 ; *Calkins* v. *Hartford*, 33 Conn. 57 ; *Crafter* v. *The M. R. Co.*, L. R. 1 C. P. 303 ; *Sherman* v. *Kortright*, 52 Barb. 267 ; *T. H. Association* v. *Giles*, 33 N. J. 260 ; and have come to the conclusion that, in this case, the exclusion of the evidence on the ground of its incompetency as a matter of law, cannot be sustained.

*Verdict set aside.*