COMMONWEALTH vs. JOHN A. CONNELLY.
SAME vs. SAME.

Bristol.    April 1, 1895. — May 24, 1895.

Present: FIELD, C. J., HOLMES, MORTON, LATHROP, & BARKER, JJ.

*Falsely Making and Filing a Nomination Paper — Complaint.*

The offences of falsely making a nomination paper, and of filing the same knowing
it to be falsely made, under the St. of 1893, c. 417, § 321, may be charged in the
language of the statute without alleging either a fraudulent intent, the manner
or means by which the paper was falsely made, or the details in respect to which
it was so made.

The signing by a third person of the name of a voter to a nomination paper, not
in his presence and at his request, and the subsequent filing of such a paper,
constitute the offences of falsely making a nomination paper and of filing a
falsely made nomination paper, within the St. of 1893, c. 417, §§ 78, 321, irrespect-
ive of the intent with which the acts were done.

TWO COMPLAINTS, under the St. of 1893, c. 417, § 321, the
first of which was for falsely making, and the second for filing,
knowing the same to be falsely made, a nomination paper.

The first count of the first complaint alleged that the defend-
ant, on November 24, 1893, " unlawfully did falsely make a
certain nomination paper for the nomination of a candidate " for
alderman of the city of Fall River. The second count of the first
complaint alleged that the defendant " unlawfully, knowingly,
and designedly did falsely make a certain nomination paper, . . .
which said nomination paper said John A. Connelly did then
and there . . . falsely make, and did then.and there falsely and
unlawfully sign by writing and signing on said nomination paper
the name Colgan Edward, . . . all of which names John A. Con-
nelly aforesaid then and there at the time and place aforesaid
did on and to the nomination paper aforesaid falsely and unlaw-
fully sign."

The first count of the second complaint alleged that the defend-
ant, on November 24, 1893, " did file . . . a certain nomination
paper, . . . which nomination paper aforesaid was falsely made,
he the said John A. Connelly aforesaid then and there, . . . when
he . . . so filed the nomination paper aforesaid, knowing said
nomination paper to be falsely made."

The second count differed from the first only in alleging the filing of a " falsely made nomination paper." Each complaint contained an averment that both counts therein were different descriptions of the same acts.

The defendant seasonably filed motions to quash the complaints, assigning as reasons therefor applicable to the first complaint, 1. that it did not appear that the defendant had any fraudulent intent in making the nomination paper; 2. that it was not averred in what manner or by what means the defendant falsely made the nomination paper; and, as applicable to the second complaint, 1. that it averred no fraudulent intent in filing the nomination paper, and 2. that it did not aver in what respect such paper was falsely made.

The defendant also filed a plea to the jurisdiction, in which he alleged that the St. of 1893, c. 417, was unconstitutional, in that the provisions requiring voters signing nomination papers to sign the same in person, and to add thereto their places of residence with street and number, if any, gave to a certain class of citizens political powers and privileges which were denied to another class of citizens, to wit, those who are physically disabled so that they cannot read or write, and those who were citizens prior to the adoption of the twentieth article of Amendment of the Constitution of the Commonwealth, and who cannot write.

The motions to quash and the plea to the jurisdiction were overruled; and the defendant excepted.

At the trial in the Superior Court, before *Maynard,* J., the case was submitted to the jury upon an agreed statement of facts, in substance as follows.

Of the signatures on the nomination paper all but six were signed in person by the voters to whom the names belonged, and of the six signatures which were made by the defendant four were made by him at the request of the persons bearing those names, and two of them before the defendant had requested the persons having those names to sign the paper. Before filing the nomination paper, however, the defendant notified the last two persons that he had signed their names, stating the character of the nomination paper and the purpose in signing their names, and received from them their assent and authority for so doing. The defendant had no intention to mislead, deceive, cheat, or

perpetrate any fraud by signing such names, but believed that it was lawful for him so to do, and he filed the nomination paper not knowing that it was falsely made other than that he had signed the names as stated above, believing that he was authorized so to do, and believed that it was lawful and proper for him to file the paper.

The defendant requested the judge to instruct the jury that upon the agreed statement of facts the defendant was entitled to an acquittal; but the judge declined so to do, and instructed the jury to return a verdict of guilty, which was done accordingly; and the defendant alleged exceptions.

*J. W. Cummings,* for the defendant.

*A. J. Jennings,* District Attorney, for the Commonwealth.

LATHROP, J.    These are two complaints, each in two counts, under the St. of 1893, c. 417, § 321, the first for falsely making, and the second for filing, knowing the same to be falsely made, a nomination paper.   The material parts of § 321 are as follows: " Whoever falsely makes . . . any certificate of nomination or nomination paper, or any part thereof, . . . or files any certificate of nomination or nomination paper, . . . knowing the same or any part thereof to be falsely made, . . . shall be punished," etc.

Motions were made to quash the complaints because no fraudulent intent was alleged either in the making or the filing of the paper, and because the manner or means in which the paper was falsely made was not alleged.

We are of opinion that the motions to quash the complaints were rightly overruled.   The offences charged of making and of filing respectively are purely statutory offences, and it was enough to charge them in the language of the statute.

In *Tully* v. *Commonwealth,* 4 Met. 357, it was said by Chief Justice Shaw: " When the statute punishes an offence, by its legal designation, without enumerating the acts which constitute it, then it is necessary to use the terms which technically charge the offence named, at common law. . . . But we think this is not necessary, when the statute describes the whole offence, and the indictment charges the crime in the words of the statute." See also *Commonwealth* v. *Harris,* 13 Allen, 534, 539; *Commonwealth* v. *Barrett,* 108 Mass. 302.

We have no occasion to consider whether the first count of the

first complaint sufficiently sets forth in what manner or by what means the defendant falsely made said nomination papers, for the manner and means are fully set forth in the second count. The counts are for the same offence, and the motion to quash is to the whole complaint, and not to any particular count thereof.

The gist of the offence in the second complaint is that the defendant filed the nomination paper knowing the same to be falsely made.

As to the first ground assigned in the motion to quash, the authorities above cited show that it was sufficient to set out the offence in the words of the statute.

The second complaint does not set out, in either count, in detail, in what respect the nomination paper was falsely made. But the offence charged is purely a statutory offence, and it was enough to charge it in the words of the statute. *Tully* v. *Commonwealth, ubi supra. Commonwealth* v. *Ferry,* 146 Mass. 203, 208.

The remaining question is whether the judge erred in refusing to instruct the jury in each case to return a verdict of not guilty. Section 78 of the St. of 1893, c. 417, provides: "Every voter signing a nomination paper shall sign the same in person, and shall add to his signature his place of residence, with the street and number thereof, if any." The question is what is meant by the words "shall sign the same in person." The natural meaning of the statute is that a voter shall, with his own hand, write his name and address. If anything less than this is permitted, the signing must be done at the request of the voter and in his presence. Previous authority or subsequent ratification is not enough. To hold otherwise would be to give no effect to the words "in person." There is nothing in the agreed facts to show that any one of the six names written by the defendant was written in the presence of the voter to whom it belonged.

No fraudulent intent is necessary to constitute the offence. It is immaterial that the defendant did not intend to break the law. It is enough that he did the things made offences by the statute. *Commonwealth* v. *Farren,* 9 Allen, 489. *Commonwealth* v. *Goodman,* 97 Mass. 117. *Commonwealth* v. *Raymond,* 97 Mass. 567. *Commonwealth* v. *Emmons,* 98 Mass. 6. *Commonwealth* v. *Wentworth,* 118 Mass. 441. *Commonwealth* v. *Shea,*

150 Mass. 314, 315. *Commonwealth* v. *Gray*, 150 Mass. 327. *Commonwealth* v. *Warren*, 160 Mass. 533.

When, therefore, the defendant signed the names of the six voters to the nomination paper he falsely made such paper, and when he filed such paper he filed a falsely made nomination paper, however innocent his intention may have been.

It is contended, however, that, as it is admitted that the defendant did not know that the paper was falsely made other than that he signed the names as before stated, believing that he was authorized so to do, and that it was lawful and proper for him to file the paper, the jury would not be warranted in convicting him of the offence set forth in the second complaint.

It was undoubtedly incumbent upon the government to prove that when the defendant filed the paper he knew that it was falsely made. But this is not the case of one person making the paper and another person filing it. The defendant himself made the paper and filed it. The statute points out how the paper is to be made, namely, that it is to be signed by the voters " in person." He is presumed to know what the statute requires, and what the statute means. When the government had shown the facts, the presumptions of law warranted a conviction.

The case of *Commonwealth* v. *Bradford*, 9 Met. 268, relied upon by the defendant, was an indictment under the Rev. Sts. c. 4, § 6, which provided that, " if any person, knowing himself not to be a qualified voter, shall, at any election, wilfully give in a vote, for any officers to be then chosen, he shall forfeit" a certain sum. The word " wilfully " was held to mean " designedly, purposely, with an intent to claim and exercise the right of suffrage." The main issue in the case was whether the defendant had had a domicil in Boston for six months before the election. At the trial in the court below the jury had been instructed that the fact that the defendant had consulted counsel with reference to his right to vote, and had received an affirmative answer, could not be regarded as negativing a knowledge on his part of his want of the legal qualification to vote. It was said by Chief Justice Shaw, with reference to this aspect of the case : " In order to convict a party, under this statute, which is extremely liberal in this respect, it is necessary to prove, not only that the party had no right to vote, but that he knew it. As this qualification

depends upon domicil, and that is often a complicated question of law and fact, we have no doubt, that if the voter, in good faith, and with an honest purpose to ascertain the right, shall make a true statement of the facts of his case to a professional man, or any other man of skill and experience, capable of advising him correctly, the evidence of such advice, and the facts upon which it was taken, are competent, as bearing upon the question whether he knew that he had not a right to vote."

In the case at bar no complicated question of law and fact was presented; nor did any question of the effect of consulting counsel arise.

The defendant does not object to the fact that the court below directed a verdict of guilty in each case, if there was no evidence from which the jury would be warranted in acquitting him. Nor does his counsel press the plea to the jurisdiction which was filed in the court below. The order therefore must be,

*Exceptions overruled.*