# CHARLESTON.

STATE v. I. R. SCAGGS

(No. 5246)

Submitted September 15, 1925.   Decided September 22, 1925.

1.  HOMICIDE—*Not Necessary for Indictment for Malicious Cutting, With Intent to Maim, to State Weapon Used.*

    In an indictment for malicious cutting, stabbing, and wounding, with intent to maim, disfigure, disable, and kill, it is not necessary to state the weapon with which the assault is made.   (p. 691).

    (Homicide, 30 C. J. § 289 [Anno]).

2.  SAME—*Whether Weapon Other Than Fist Was Used in Making Assault, With Intent to Maim, is for Jury.*

    Under such indictment, whether a weapon other than his fist was used by the accused in making the assault, charged in said indictment, is a question of fact to be determined by the jury from all the facts and circumstances in the case. (p. 694).

    (Assault and Battery, 5 C. J. § 332).

3.  SAME—*Evidence Held to Sustain Conviction for Unlawful Wounding.*

    A case where the evidence is sufficient to sustain the verdict of the jury.   (p. 694).

    HATCHER, JUDGE, absent.

    (Assault and Battery, 5 C. J. § 332).

    NOTE:   Parenthetical references by Editors, C. J.—Cyc.   Not part of syllabi.

Error to Circuit Court, Boone County.

I. R. Scaggs was convicted of unlawful wounding, and he brings error.

                                                *Affirmed.*

*L. P. Hager,* for plaintiff in error.

*Howard B. Lee,* Attorney General, and *R. A. Blessing* and *J. Sherman Lilly,* Assistant Attorneys General for the State.

WOODS, JUDGE:

Convicted of unlawful wounding and sentenced to imprisonment in the county jail for one year and fined $200.00,

the plaintiff in error, hereinafter referred to as defendant, seeks a new trial.

According to the testimony of T. J. Foster, the prosecuting witness, on December 19, 1923, the defendant, in company with his brother in law, one McClure, came into the post office and store kept by said prosecuting witness, at Racine, Boone County, and invited said witness to the outside of the building; informed him that he understood that he had accused his wife of stealing ten dollars from him; invited him to take off his glasses; and further stated that he would knock the face off of him. Foster went outside, endeavored to leave the premises, and on reaching the corner of the building was struck on the ear with "some blunt instrument" by the defendant, and knocked from twenty to twenty-five feet down the bank to a level place in the road. Defendant then jumped on said witness, striking him with the "same instrument" (the identity of which is not established by the evidence), which resulted in a cut on the cheek bone about three-quarters of an inch, a deep cut into the nose, and, besides many other wounds and abrasions on his head and face, the dislocation of his arm. Prosecuting witness endeavored to get away and, in doing so, defendant followed him into the post office and continued the assault. Witnesses for the defense testified that Foster dragged defendant into the post office in endeavoring to rid himself of him. The services of a doctor were procured. His testimony, however, was not adduced, but several witnesses testified to the physical condition of Foster, showing several cuts, bruises and knots upon his head, face and body, besides the dislocation of his arm. The prosecuting witness was disabled for a number of months.

The defendant testified that he went to the post office and invited Foster out and engaged him in a controversy about defendant's wife. He stated that he assumed when Foster started from the building that he (Foster) intended to get a rock with which to assault him. He states that he, defendant, ran off the store porch and grabbed Mr. Foster around the neck, at which time the fight started. He denies

having anything in his hand and states that the injuries were inflicted with his fists. Other witnesses state that he used his fists only. No one testified to seeing a weapon in his hand. The defendant after the altercation sought a justice of the peace and upon his voluntary confession to assault and battery, was fined therefor. He was later indicted by a grand jury for malicious wounding, under the statute.

The codes of Virginia and West Virginia are practically the same as to what constitutes the crime of mayhem. Section 9, chapter 144, of the Code of West Virginia, reads as follows:

> "If any person maliciously shoot, stab, cut or wound any person, or by any means cause him bodily injury with intent to maim, disfigure, disable or kill, he shall, except where it is otherwise provided, be punished by confinement in the penitentiary not less than two nor more than ten years. If such act be done unlawfully, but not maliciously, with the intent aforesaid, the offender shall, at the discretion of the court, either be confined in the penitentiary not less than one nor more than five years, or be confined in jail not exceeding twelve months, and fined not exceeding five hundred dollars."

It will be seen that this statute provides for two felonies, which must be so charged in the indictment and tried as such on the trial: (1) malicious wounding, etc., with intent to maim, disfigure, disable or kill, which having the essential element of malice, corresponding to murder; (2) unlawful, but not malicious wounding, etc., with the intent aforesaid, but wanting the element of malice, corresponding to manslaughter.

The indictment here is for malicious wounding, with intent to maim, disfigure, disable, and kill. It did not state the weapon with which the assault was made. It is not subject to demurrer or motion to quash for this reason. *State* v. *Gibson*, 67 W. Va. 548; *State* v. *Coontz*, 94 W. Va. 59. However, an indictment under this section for maliciously or unlawfully causing bodily injury, otherwise than by cutting,

stabbing or wounding, should specify the means by which the injury was caused. See cases cited above.

But two errors are urged by the defense for a reversal of the judgment: (1) An instruction given by the court to the jury; and (2) that the verdict was not supported by the evidence. The instruction complained of reads as follows: "The court instructs the jury that if they believe from the evidence in this case, beyond a reasonable doubt that the defendant in this case, during the altercation with Tom Foster, struck the said Foster with a dangerous weapon of any kind, and inflicted with said weapon upon the said Tom Foster a wound, with intent, then there, unlawfully, maliciously and feloniously to maim, disfigure, disable or kill the said Foster, then the jury should find the defendant guilty of malicious wounding as charged in the indictment; if the jury believe from the evidence that the act was done unlawfully, but not maliciously, then the jury should find him guilty of unlawful wounding as charged in the indictment." We think this instruction submitted the law of the case very clearly, and is not open to criticism. It merely told the jury that before they could convict the defendant of either of the felonies charged in the indictment, that they must believe that the defendant assaulted the prosecuting witness with a dangerous weapon of some kind, with intent to maim, disfigure, disable and kill him.

The second ground of error is predicated on the claim that the evidence did not show the use of a weapon; that under the indictment in this case in the absence of the use of some weapon, a conviction for felony would not be warranted. The case of *State* v. *Gibson, supra,* is cited, which holds: "To constitute a wound, within the meaning of this Sec. 9, ch. 144, Code 1906, an injury must have been inflicted with a weapon, other than any of those with which the human body is provided by nature, and must include a complete parting or solution of the external or internal skin." In *State* v. *Coontz, supra,* this court held that under this section (Chap. 144, sec. 9, Code), where the indictment alleged an infliction "of a bodily injury" with intent to maim, disfigure, disable and kill, that

it was sufficient to allege that "such injury was inflicted by means of a blow with defendant's fist"; the grade of the offense so charged being the same as a technical stabbing, cutting and wounding under said statute last cited. The indictment in the instant case, as has been shown, however, is not one charging "bodily injury", and hence the last mentioned case does not apply. The determining factor here is whether a weapon other than those with which the human body is provided, was used by the defendant in making the assault charged in the indictment. The law is that the question whether there was an assault with a dangerous weapon is to be submitted to the jury. 5 C. J. 793. That issue was squarely submitted to the triers of the fact in the instruction of the court. Under this charge is the verdict supported by the evidence? Upon this contention, the whole of the evidence has been given a careful consideration by this court, but it is not deemed necessary to enter into a minute statement or discussion of it in this opinion. It is sufficient to say that the testimony of the prosecuting witness, supported by several reputable and unprejudiced witnesses, makes a strong case of unprovoked and violent assault upon him, resulting, as already stated, in severe injuries to him about his face, head and arm.

The only controverted question in the case is whether a weapon of any kind was used. Under all the circumstances attending the assault, the severity and the character of the wounds inflicted, together with the statement of the prosecuting witness that he was struck with some kind of "a blunt instrument," might well lead the jury to the conclusion that some kind of weapon was used. The only countervailing testimony is that of the defendant, his brother-in-law, and another person who saw part of the altercation. The other testimony in the record as to material facts are in conflict with their statements, and in corroboration of those of the prosecuting witness.

The weight of the evidence and the inferences to be drawn therefrom are within the peculiar province of the jury. Let the judgment be affirmed.

*Affirmed.*