# WHEELING.

### STATE OF WEST VIRGINIA *v.* VEST.

Submitted June 19, 1883—Decided June 30, 1883.

1. A record imports such absolute verity, that no person against whom it is pronounced will be permitted to aver or prove anything against it. (p. 800.)

2. The record to which such absolute verity is imputed consists not only of what is written on the record-book and authenticated by the signature of the judge, but it also consists of all indictments, pleadings and papers referred to by the record-book and thereby made a part of the record. (p. 800.)

3. But if a record is interlined or erased in a material matter and it is alleged, that this was done after the record was made, by some unauthorized person, such alteration constitutes no part of the record, and an enquiry may be made into the genuineness of such altered record, and it may be proven by parol, that such alteration was thus made by one not authorized to make it. This is not controverting the absolute verity of the record, but simply enquiring as to what really constitutes the record. If this were not allowed, the absolute verity attributed to a record could be used to give sanction to a forgery or to a fraudulent erasure of the record. (p. 801.)

4. When a record is thus to be restored to its original and true form, the proper mode of doing it is by a motion, which can be made even after the case, in which the record is made, has been removed to the Appellate Court; but such motion can only be made in the court below, in which the record was made up. (p. 801.)

5. Though a record appears to have been interlined or erased, its verity can not be assailed incidentally or in any other court, but only in the court where the record is made, and then only when it is directly called in question by a motion to correct it. (p. 802.)

6. When a record has been thus restored to its original and true form, the record will in all other proceedings be taken in its corrected and not in its falsified form. (p. 802.)

7. If an indictment for felony found by a grand jury has omitted to charge, that the criminal act done was done feloniously, and after the grand jury is discharged the word "feloniously" is in-

serted in the indictment so as to render it in form a good indictment, when before it was fatally defective, and the defendant pleads *not guilty*, and the jury find a verdict against him, he may then move the court to have the indictment restored to its original and true form, and when so restored judgment may be arrested for the fatal defect in the indictment. (p. 808.)

8. If in such an alleged case the court below refuses to hear the evidence offered to prove such unauthorized interlineation of the word "feloniously," the Appellate Court will reverse the judgment entered upon such verdict, and will remand the case with instructions to the court below, on such motion, to hear the parol evidence and restore the indictment, if it has been changed, to its original and true form, and then to determine the motion in arrest of judgment, treating, in deciding such motion, the indictment, on which the defendant had been tried as if at the trial it had been in its true and original form. (p. 806.)

Writ of error to a judgment of the circuit court of the county of Randolph, rendered on the 30th day of September, 1882, on an action against Charles Vest for felony in said court then pending, allowed upon the petition of said Vest.

Hon. R. F. Fleming, judge of the sixth judicial circuit, rendered the judgment complained of.

Green, Judge, furnishes the following statement of the case:

On the 16th day of September, 1882, the grand jury of Randolph county presented an indictment against Charles Vest, which was endorsed "a true bill," which endorsement was signed by the foreman of the grand jury. The record states, that it was an indictment against Charles Vest for a felony. The indictment is now apparently in the following words:

"State of West Virginia, Randolph County, to-wit:

         "In the Circuit Court thereof,   }
             "September Term, 1882. }

"The grand jurors of the State of West Virginia in and for the body of the county of Randolph and now attending the circuit court of said county, upon their oaths present that Charles Vest, of said county, on the — day of July, 1882, in the county aforesaid, one silver watch and chain of the value of twenty-six dollars, of the goods and chattels of one A. P. T.

Wilson, then and there being found, feloniously did steal, take and carry away against the peace and dignity of the State of West Virginia.

"Found upon the evidence of John Mann, A. P. T. Wilson, Martin Pfan, J. J. Buckey, G. W. Buckey, J. D. Wilson and A. W. Suiter, witnesses sworn in open court and sent before the grand jury to testify at the instance of the prosecuting attorney.                                                                    "CYRUS H. SCOTT,

                                                                                              "*Prosecuting Attorney.*"

It was after the verdict and before the judgment claimed by Charles Vest, that the word feloniously, interlined in the indictment, was interlined after the grand jury was discharged, but before the plea of not guilty was put in. The defendant being unable to procure counsel, and desiring the assistance of counsel, the court assigned him counsel. He pleaded not guilty on the trial, and on September 30, 1882, the jury found this verdict: "We, the jury, find the prisoner, Charles Vest, guilty of grand larceny in manner and form as charged in the indictment."

The defendant by his counsel moved the court to arrest the judgment against him upon this verdict, because the indictment and the record thereof were not sufficient. He alleged, that the indictment had been changed by inserting the word "feloniously" therein after the same had been returned by the grand jury and after said grand jury had been discharged, and before the prisoner's arrangment on said indictment and his plea of not guilty thereto; and the prisoner in support of his motion offered to introduce witnesses to prove, that the said word "feloniously" had been so interlined and written into the said indictment, after the finding thereof and the discharge of the grand jury; that the court upon the inspection of the record and the said indictment, to which the defendant had pleaded "not guilty," considered the same to be sufficient and refused to arrest the judgment, and also refused to allow the prisoner to prove, that the said indictment had been so altered and changed by interlining and writing therein the word "feloniously" as aforesaid. To which action of the court the prisoner excepted, and his bill of exceptions setting forth these matters was signed, sealed and enrolled as a part of the record.

The court rendered a judgment, that said Charles Vest be imprisoned in the penitentiary of this State for the term of three years, the period fixed by the court. And it was ordered, that the sheriff of said county do as soon as possible after the adjournment of the court remove and safely convey said Charles Vest from the jail of the county to the said penitentiary therein to be left imprisoned and treated in the manner directed by law. And thereupon he was remanded to jail, and at his instance the execution of said judgment was suspended for thirty days in order to allow him to present a petition to this Court for a writ of error and *supersedeas* to said judgment. Such petition was presented and allowed October 21, 1882. And it being now represented to this Court by an *amicus curiæ* that the defendant was without counsel in this Court, he being unable to employ counsel, and it being asked, that his case might be submitted to this Court for its decision, though no arguments had been made or submitted on the part of the State or by the defendant, as is required by the rules of this Court, and it appearing to this Court, that the prisoner is in jail and unable to employ counsel, and that he desired his case to be acted on now by this Court, and as it is now ready for hearing, except that no arguments of counsel have been filed and docketed in this Court for hearing since last January, this Court assents, under the circumstances, to take up and decide the case, though its rules have not been complied with.

No appearance of counsel for either party.

GREEN, JUDGE, announced the opinion of the Court:

There are so far as appears no errors in the proceedings in this case unless, the court below erred in refusing on the motion of the prisoner to allow him to offer evidence to prove, that the word "feloniously" had been interlined in said indictment after the same had been returned by the grand jury and after the grand jury had been discharged, but prior to the prisoner's pleading "not guilty." The record on its face shows, that the word "feloniously" had been inserted by interlineation in the indictment; but of course it does not appear, whether this was done before or after the grand jury

acted upon this indictment; and the only question really in this case is, whether the circuit court erred in refusing to permit the prisoner to prove by witnesses, that this interlineation was made after the grand jury had acted upon the indictment and had been discharged and in refusing to arrest the judgment. It seems to me, that it would be a reproach to our jurisprudence if a material allegation could be inserted in an indictment after it had been found by a grand jury to the prejudice of a party, and that such alteration of an indictment could because it is a part of record in no manner be considered, as this would amount to depriving the accused of the protection given him by the Constitution, that the indictment must be found by a grand jury.

It is certainly a rule invariably recognized by the courts, that a record imports such absolute verity, that no person against whom it is pronounced will be permitted to aver or prove anything against it. This rule is well established, and we now here refer to but a few of the many cases, in which this doctrine has been held. See *Rex* v. *Carlile,* 2 Barns. Ad. 971; 23 Eng. Ch. R. 226; *Reitzenberger* v. *Braden,* 18 W. Va. 280; *Carper* v. *McDowell,* 5 Gratt. 212, 226; *Harkins* v. *Forsyth,* 11 Leigh 24; *Taliaferro* v. *Pryor,* 12 Gratt. 277; *Vaughn et als.* v. *The Commonwealth,* 17 Gratt. 386; *Quinn et als.* v. *Commonwealth,* 20 Gratt. 138. Whatever therefore on the face of a book of record has been duly authenticated by the signature of the judge, must be held to be an absolute verity, and it cannot be contradicted; and so also any paper actually referred to on the record-book as filed or as constituting a part of the record is to be regarded as a part of the record, and is as much a verity as if it had been spread out at length as a part of the record. But it is only that which was actually on the record-book, when thus authenticated or that is actually contained in some paper so made a part of the record by reference, that is thus held to be an absolute verity. And therefore if after a record is made up and duly authenticated by the signature of the judge, any addition is made to such record fraudulently by any interlineation made by another, this false and fraudulent interlineation constitutes in fact no part of the record, and evidence introduced to prove, that such interlineation was falsely and fraudulently

made by one not authorized to make the same, is really not an impeachment of the verity of the record, but is simply proving, that such fraudulent interlineation was really never a part of the record. The absolute verity attributed to a record cannot be used to give sanction to a forgery or to a fraudulent erasure of the record. And accordingly the authorities show, that where a record has been falsified by erasure or interlineation it may on motion be amended, or more properly speaking it may be restored to its original condition. The reason assigned for this in the old books is, "because the wickedness of any person in completing the records of the courts ought not to obstruct its justice or prejudice any of the parties."

The authorities sustaining these views are most of them very ancient. The first case I find is, *Whiteing* v. *Abbington*, 2 Roll. R. 80–81 decided about 1620, in which judgment was rendered against Abbington and Mary, his wife, but afterwards the word Mary was erased from the records. Nevertheless execution was issued on the judgment, as it was originally, and Mary Abbington brought a writ of error in the exchequer chamber alleging, that there was no judgment against her. But when this writ of error was pending a motion was made in the court below to amend the record, or more properly speaking, to make in the record-book an entry stating what had been erased from the original record, and that the court had changed the erased record by restoring the words which had been erased; and this was done and approved by the appellate court, and it had corrected accordingly the transcript of the record, which had been sent and certified to it, before it had been corrected in the court below on motion.

Judge Tucker in *Bias et al.* v. *Floyd, Governor*, 647–648, reviews this case, and I think correctly deduces from it these principles : First, that if a record has been altered by erasure or interlineation by some unauthorized person, the court will upon motion restore it to its original and true form; Second, that this correcting of the record can only be made in the court whose record it is, and not in the appellate or any other court; Third, that when a record has been thus interlined or erased its verity cannot be questioned, in-

cidentally in any other proceeding, but the verity of what is an apparent record can only be brought in question directly by a motion to correct it, or more properly to restore the record to its original condition; and lastly, when it has been thus corrected or restored to its original form in any other proceeding, it will be taken in its corrected or original form and not in its falsified form. These principles were recognized in our ancient books and decision as correct, and seem to have been almost undisputed, nor have they been controverted so far as I have discovered in the more modern decisions.

The modern decisions firmly maintain the ancient rule laid down by Lord Coke in 1 Inst. 260, "*that the rolls being the records or memorialls of the judges of the courts of record import in them such incontrollable credit and veritie, as they admit no averment, plea or proofe to the contrarie.*" But the record, which is thus held to be an absolute verity is the record as it was originally authenticated by the signature of the judge. And there is nothing in the principles laid down in *Whiteing* v. *Abbington,* 2 Roll. 80, that is in conflict with this principle laid down by Lord Coke, and universally followed in the modern decisions. For the principles established in the decision in Rolle's Reports do not permit the original record, authenticated by the judge's signature, to be altered by proof that its statements are false, but simply allows it to be proven, that what is this original record apparently authenticated by the signature of the judge was not in point of fact the record, which had been so authenticated by the judge, but that by a forgery, an interlineation or erasure that is now falsely made to appear to be such record, which never was in fact a record, and never had been so authenticated by the signature of the judge. The principles laid down in said case reported in Rolle's Report are recognized as correct. See Roll. Abr. title Am. § 5, 209, and in Vin. Abr., under title Am. and Jeofails; 2 Vin. Abr. 312; also in Bacon's Abr. vol 1 title Am. and Jeofails (4) p. 259.

In *Foster and Taylor's Case,* Poph. R. 196, it was decided in an action of ejectment the court below amended a record which had been altered without proper authority though when so amended the case was pending in an appellant

court on writ of error the character of the alteration made in this case does not appear in this report of the case but it does appear in Bacon's Abr. vol. 1 p. 259, title Am. and in Jeofails p. 259, where it is thus stated: "In *ejectione firmæ* the leave was made the 10th of May; after verdict for the plaintiff it was made the 11th of May by a rasure; and it appearing to the court, that the declaration was vitiated by the said rasure they amended it both in C. B. and B. R." I understand from this, that the declaration in the suit was after verdict changed by erasing May 10 and substituting May 11, which resulted in vitiating the judgment of the court. After a writ of error had been taken to this judgment, the record was amended in the court below by restoring the true date of the leave as it was originally in the declaration, May 10; and this was approved by the appellate court. This case shows, that the rules we have stated as deducible from the case of *Whiting* v. *Abbington*, 2 Roll. 80, 81, are as applicable to a change made fraudulently in a declaration or indictment as they are to those made on the record-book, for such declaration or indictment is as much a part of the record when referred to in it, as are the entries on the record-book itself. So it is stated in 2 Vin. Abr. 312, and in Bacon's Abr. vol. 1 p. 225, that where it appeared in a *venire facias*, that *Chumbry* was erased and made *Henily* the record was amended and restored to its original state. Bacon in his Abridgment vol. 1 p. 259, thus states the law: "If any part of the record be vitiated by rasure the court will restore it by amendment, because the wickedness of any person in corrupting the records of the court, ought not to obstruct the justice of the court or prejudice any of the parties." And he inclines to the opinion though it is doubted, that the person who makes such fraudulent erasure is guilty of felony, even though it be afterwards corrected by the court making such amendment and the record is then restored to its original state.

These views expressed by the old law writers and in the reports were approved by the court of appeals of Virginia in *Bias et al.* v. *Floyd, Governor*, 7 Leigh 640. In that case the State issued a *scieri facias* to enforce the amount due on a recognizance conditioned, that one Hagar should appear on

the first day of the next term ot the superior court of law of Kanawha county to do and receive what should be enjoined him by said court *on a charge of having feloniously passed certain counterfeit money and for having counterfeited the same,* which recognizance had been broken and forfeited. A plea of no such record was filed, and the oyer was prayed of the recognizance and the *scieri facias* demurred to. And then a rule was awarded on certain affidavits to show cause why the recognizance should not be suppressed and held void, and the further prosecution of the *scieri facias* discontinued. This rule was discharged, the demurrer overruled and judgment given against the defendant on the plea of no such record. The affidavits showed, that the words above italicised or words equivalent to them had been interlined in the recognizance after it had been taken by the justice of the peace, and that after such interlineation it had not been acknowledged or seen by the defendants, who were not informed that such interlineation was made. The court of appeals reversed the judgment discharging the rule, and the judgment on the *scieri facias,* and remanded the cause to said circuit court with directions to amend the recognizance according to the right of the case, and then to proceed to a new trial of the *scieri fcaias* upon the defendant's plea of *nul tiel record.* The court treated the recognizance as a record, and held, that on the rule or on a motion it could by an order of the court be amended, or more properly restored to its original form before its interlineation, and if it was in fact interlined after the recognizance was taken in the manner claimed, the recognizance should be restored to its original form and when so restored, it being materially different from the recognizance described in the *scieri facias,* the judgment would have to be rendered for the defendant on the plea of *nul tiel record.* The views taken by the court were those hereinbefore expressed, and Judge Tucker, who delivered the opinion of the court referred to and approved the old English authorities, which I have cited.

This case meets our approval, and especially the four deductions drawn by Judge Tucker from the case in 2 Roll. R. p. 80, 81, which we have in substance stated. It may be said, that in this case there was no distinct motion made to

correct the indictment or to restore it to the condition in which it was before the alleged interlineation of it. But the record as we have set it out discloses substantially, that the court below was asked to hear the evidence to prove, that this indictment was interlined, after it was proved by the grand jury, in a material matter indicated, and the court refused to hear such evidence. And this motion of the defendant was in connection with a motion in arrest of judgment, which motion must have been sustained provided the court on hearing the evidence had ordered the indictment to be corrected by striking out the interlined portion, as being no part of the indictment found by the grand jury, it having been interlined subsequently.

We therefore consider, that there was as shown by this record substantially a motion to strike out of the indictment this interlined portion, as constituting no part of the indictment or record; and therefore, that the correct mode of proceeding has been substantially adopted by the defendant in this case, and we may remark here, that in the case of *Bias et al.* v. *Floyd, Governor,* 7 Leigh 640, there was, as in this case, no formal motion to strike out the interlineation as constituting no part of the record and restore the recognizance to its original condition, yet the court of appeals proceeded just as if there had been such formal motion. The irregularity in this respect is no greater in the case before us than it was in the case in 7 Leigh, and we shall disregard it as was done by the court of appeals of Virginia in that case. This formal motion to restore this indictment to its original form and to make an entry of such restoration in the record-book could be even now made in the circuit court of Randolph, as we have seen, and this Court could not decide this case till an opportunity was afforded to make such formal motion. But we think, this motion has been substantially made already, and that the circuit court of Randolph has substantially refused to entertain such motion or to hear any evidence in support of the same, and has substantially dismissed it; and therefore we consider, that there is no necessity for postponing the decision of this case in order that such formal motion may be made.

It is very obvious that the interlineation in this case, that

is the words "feloniously," made a most material alteration in the indictment, if such interlineation was really made after the grand jury found the indictment and had been discharged; and that unless these words were in the indictment as found by the grand jury, the indictment is fatally defective, and the judgment on the verdict of the jury must be arrested, as on such an indictment no judgment could· be rendered against the defendant.   The fact, that the record-book says, that "the grand jury presented an indictment against Charles Vest for a felony" would not properly speaking, be contradicted by proving, that that the word "feloniously" was interlined, after the grand jury had found this indictment, but it would thus be shown, that the indictment upon which he was tried was inconsistent with the original indictment as actually found by the grand jury; and this original indictment, as so found and endorsed by the foreman of the grand jury, is as much a part of the record as is the entry on the record-book signed by the judge.   The calling of the offense set out in the indictment a felony on the record-book is stating a legal deduction not a fact; and if the word "feloniously" was not used in the original indictment, even this legal deduction was erroneously drawn by the court.

The judgment of the circuit court rendered on this verdict must therefore be set aside, reversed and annulled; and this case must be remanded to the circuit court of Randolph county with instructions to hear any testimony, which may be introduced to prove, that the word "feloniously" had been interlined after the indictment had been found by the grand jury and after they had been discharged, and after hearing all the evidence on each side in reference to the alleged alteration of the indictment after it was found, the court shall by an entry of record correct the indictment so as to make it correspond with the indictment as found by the grand jury; or if in its present form the indictment is the same as that found by the grand jury, and it has not since such finding been so interlined or altered, then it shall make an entry on its record to that effect; and the court after it has thus restored the indictment to the form, in which it was when found by the jury or has determined, that it is now in

such form it shall proceed to determine the motion of the defendant in arrest of judgment regarding the indictment as of the form, which the court upon this evidence shall determine it to have been, when the indictment was found by the grand jury.

THE OTHER JUDGES CONCURRED.

JUDGMENT REVERSED.    CAUSE REMANDED.