For the reasons stated, the decree of the circuit court is affirmed.

*Affirmed.*

---

# CHARLESTON

## State v. McCoy.

## Submitted June 12, 1907.   Decided November 26, 1907.

1. INDICTMENT—*Description of Property.*

    An indictment for robbery of "one promissory note of the value of $50.85, one purse of the value of 25 cents and one time check of the value of 50 cents," sufficiently describes the property. (p. 71.)

2. SAME—*Intent.*

    The *animus furandi*, for the intent to take and deprive another of his property, is an essential element in the crimes of robbery and larceny. (p. 72.)

3. SAME—*Instruction.*

    An instruction to the jury, in a trial for one of such offenses, which ignores this essential element, is bad, and the giving thereof constitutes reversible error. (p. 72.)

4. CRIMINAL LAW—*Appeal—Presumptions.*

    In this state the presumption is that an exceptor is prejudiced by the giving of an erroneous instruction; and a judgment based thereon will be reversed for this cause, unless it clearly appears from the record that he could not have been prejudiced by the giving thereof. (p. 73.)

Error to Circuit Court, Mingo County.

Tug McCoy was convicted of robbery, and brings error.

<i>Reversed. Remanded.</i>

John L. Stafford and Marcum & Marcum, for plaintiff in error.

Clarke W. May, Attorney-General, for the State.

Miller, President:

Tug McCoy, who stood indicted for robbery jointly with one Goodman, was tried alone in October, 1905, but the verdict of conviction was set aside and a new trial awarded. In July, 1906, he was again put upon trial, the jury acquitting him of robbery but finding him guilty of grand larceny. From the judgment overruling his motion for a new trial and of imprisonment for three years he is prosecuting this writ of error.

The judgment overruling his demurrer to the indictment and his motion for a new trial, giving instructions numbers one and two of the state, and refusing his instruction number one, are the alleged errors relied upon. The substantial charge in the indictment, containing but one count, is that McCoy and Goodman, on the first day of June, 1905, in Mingo county, armed with a loaded pistol, feloniously assaulted E. F. Chapman and put him in bodily fear, "and one promissory note of the value $50.85, one purse of the value of 25 cents, one time check of the value of 50 cents, and divers United States Treasury notes, divers United States silver certificates, divers United States bank notes, divers United States gold certificates, United States coin and United States gold coin in the aggregate of $19.33, and of the value of the goods, chattels, property and money of the said E. F. Chapman, from the person and against the will of the said E. F. Chapman, then and there, towit, on the day and year aforesaid, in the county aforesaid, feloniously and violently did steal, take and carry away, against the peace and dignity of the state."

Robbery at common law is the felonious taking from the person of another of goods or money to any value, by violence or putting in fear. Our statute does not define robbery. Code, section 12, chapter 144, prescribes the punishment: "If any person commit robbery, being

armed with a dangerous weapon, he shall be confined in the penitentiary not less than ten years; if not so armed, he shall be confined therein not less than five years." Robbery is but larceny, with the aggravated circumstances of force and arms added. Code, section 15, chapter 145, provides that "if any person steal any bank note, check or other writing or paper of value, or any book of accounts for or concerning money or goods due or to be delivered, he shall be deemed guilty of larceny thereof, and receive the same punishment, according to the value of the thing stolen, that is prescribed for the punishment of larceny of goods or chattels." It is only by force of this statute that bank notes, checks and other writings and papers of value are made the subject of larcency; at common law they were not so.

Counsel for the prisoner and for the state both argue alleged ground of demurrer, but the record shows no demurrer or action of the court thereon. The only ground of demurrer is the omission of a more particular description of the note and check. As a general rule, an offense is sufficiently charged if stated in the language of the statute, and with respect to notes, checks and other writings the name or designation by which they are commonly known is sufficient. *Frederic* v. *State,* 3 W. Va. 695; *Commonwealth* v. *Gallagher,* 126 Mass. 54; *Commonwealth* v. *Brettum,* 100 Mass. 206; *Dignowitty* v. *State,* 17 Tex. 521; *Commonwealth* v. *Campbell,* 103 Mass. 436. It is conceded that the indictment is good with respect to the United States money alleged to have been stolen, but it is claimed that the aggregate value thereof was insufficient to make the offense grand larceny, and that, the indictment being bad as to the note and check, the value of the money and purse would not raise the offense to grand larceny. If this were so, it would not make the indictment bad on general demurrer; for as to such of the subjects of larceny as were not sufficiently charged, they would be treated as surplusage and as not vitiating the indictment. *State* v. *Howes,* 26 W. Va. 111. As, however, the record does not show any demurrer or action of the circuit court thereon, the question is not before us and the demurrer need not be further considered. The point, however, recurs upon the second ground of error as-

signed, for it is said that if the indictment was bad as to note and check and no proof under the indictment was admissible as to them, the verdict of grand larceny could not stand, because the aggregate of the money and the value of the purse was not sufficient to make grand larceny, and that the motion for a new trial should have prevailed. Conceding the premises, the conclusion would follow; but, as we have indicated, we think the indictment is good as to the note and check; and that the second ground of error is not sustained.

With respect to instructions for the state numbers one and two, we think they are both fatally defective. Number one properly defines robbery in technical language to be the felonious taking of money or goods of any value from the person of another or in his presence against his will by violence or putting in fear. It told the jury that if they believed from the evidence that McCoy, by himself or with Goodman, procured the *money* alleged in the indictment from Chapman by putting him in fear or by force or violence they should find him guilty of robbery. This instruction wholly ignored any of the articles alleged to have been stolen except the money. The second instruction told the jury that if McCoy and Goodman, armed with a dangerous weapon and acting in concert feloniously and by force or violence or by putting him in fear, took from him or in his presence money or property of any value mentioned in the indictment, he was guilty of robbery. The evidence shows that both the defendant and Goodman were policemen, and whatever money or other articles were taken from Chapman were taken in an alleged attempt to make an arrest. These instructions cover robbery; neither considers the subject of larceny, covered by the greater offense charged. To make the offense grand larceny, more than the money would have to be considered. The first instruction would be bad as covering grand larceny if the effect was to tell the jury that the taking of the money alone would constitute grand larceny. Both instructions are defective also, not for the reasons which we understand are assigned, but for the more potent reason that each ignores the element of intent necessary. Each assumes that the taking, by violence or putting in fear, of the money and property constituted the offense; whereas

the *animus furandi* is an essential element in the crime of robbery. *Jordon's Case*, 25 Grat. 943. The first instruction did tell the jury the felonious intent might be collected from all the evidence and circumstances, and the second limited the same to the taking of the property feloniously by force or violence; but neither stated in what the specific felonious intent necessary consisted. To make the offense robbery or larceny, and particularly so in the case of public officers, the intent to take from another and deprive him of his money or property is essential.

But it may be inquired, did the giving of these erroneous instructions prejudice the rights of the prisoner? In this state the presumption is that an exceptor is prejudiced by the giving of an erroneous instruction, and the judgment will be reversed for this cause unless it clearly appears from the record, which is not the fact here, that the exceptor could not have been prejudiced by the giving thereof. *State* v. *Douglass*, 28 W. Va. 297; *Ward* v. *Ward*, 47 W. Va. 766; *Ward* v. *Brown*, 53 W. Va. 227.

Instruction number one for the defendant was in substance that if the jury believed from the evidence that McCoy was a policeman at the time and place mentioned, then it was his duty and right to arrest any person violating the law or acting disorderly in his presence, and that he was justified in carrying the pistol referred to. This instruction attempts somewhat inartistically to define the rights and duties of a police officer; but it is made inapplicable to the facts in the case, and is without the conclusion justifying it; it was properly rejected.

As the judgment must be reversed and a new trial awarded, for the erroneous giving of instructions one and two on behalf of the state, we make no further comment on the evidence.

*Reversed.     Remanded.*