STATE OF WEST VIRGINIA

*v.*

KESSLER SMITH, *et al.*

(No. 9899)

Submitted April 15, 1947. Decided May 13, 1947.

*G. G. Duff* and *Wysong & Wysong,* for plaintiffs in error.

*Ira J. Partlow,* Attorney General, and *J. Chandler Curd,* Assistant Attorney General, for defendant in error.

KENNA, JUDGE:

Wilbur Stull, Kessler Smith and Paul Redman were indicted, convicted and sentenced in the Circuit Court of Nicholas County under an indictment for unlawful wounding as defined in Code, 61-2-9, the verdict being for assault and battery, a lesser and integral part of the offense charged, permissible under Code, 62-3-14. On this writ of error the specific assignments go to the sufficiency of the State's testimony, to the giving of instructions tendered on behalf of the State, to the refusing of instructions tendered on behalf of the accused and to the exclusion of testimony of justice of the peace M. J. Maloney tendered on behalf of the defendant.

The testimony of the State is that about one P. M. on February 14, 1946, the three defendants were in the automobile of Wilbur Stull parked near the intersection of a dirt road with the highway between Hominy Falls and Summersville when a mail truck driven by Alban Helms and carrying C. C. Kyle and Mrs. Florence Ashley as passengers on its way from Summersville to Hominy Falls, drove up and stopped behind their car. C. C. Kyle got out of the mail truck and started to its back to get grocer-

ies to carry to his home that was on the intersecting dirt road some little distance from the main highway. Paul Redman saw him, got out of the Stull car and called to him that he wanted to talk with him. Kyle told him to wait until he got his groceries. This he did as Redman was demanding an explanation of threats he had heard Kyle had made concerning "old man Smith". Kyle testified that he told Redman he didn't know of having made such threats, at the same time walking down the dirt road toward his home with Redman behind him. In the meantime Kessler Smith had gotten out of the automobile and had walked by the side of Kyle, crowding him to the side of the road and by pushing and jostling preventing him from looking behind to see who was following. Kyle says that Wilbur Stull ran up behind him, struck him, and jumped on his back carrying him forward on his face, and, lighting astride his shoulders and neck, struck him violently with his fists until Smith told him "that is enough" and to get up, which Stull did. When Kyle could rise he continued down the road to his home.

The testimony of the defense is that Redman, after demanding an explanation of the threats that he had heard Kyle had made, went with Kyle a short distance down the dirt road and struck him after Kyle, by gesture, had threatened to hit Redman with a jar of peanut butter Kyle was carrying. Redman admits that he struck Kyle two or three times and that Smith got out of the car and told him to stop. He says that Stull was in the car during the entire occurrence. Both Smith and Stull corroborate Redman in all material details. The defendants say that they were at the road intersection waiting for a person by the name of Virgil Carpenter whom they intended to take to Marfrance in Greenbrier County in the Stull automobile, evidently to overcome the possible inference of prearrangement of the assault upon Kyle. The State was allowed to put Virgil Carpenter upon the stand, who denied any arrangement with the defendants and swore that on that afternoon he was actually in Marfrance. The mail truck had driven away before the assault occurred so that

neither Alban Helms nor Mrs. Ashley could throw light upon the actual occurrence.

·We are of the opinion that the State's testimony is sufficient to sustain a verdict against all three of the defendants on the theory that there was an assault and battery committed upon Kyle in which they all to a degree participated.

Immediately following the assault the defendants drove to Summersville, appeared before justice of the peace Maloney and, upon the complaint of Smith, Redman confessed to assault and battery and was fined five dollars and costs, which he promptly paid. ·We think it was not error to exclude the testimony of this occurrence for the purpose of sustaining the plea of the defendant of *autrefois convict* since the proceedings before the squire were brought by one joint defendant against another joint defendant and were not participated in by either a peace officer or the victim of the assault. Collusive proceedings of this nature are never regarded as a valid defense. *Haldeman* v. *Davis,* 28 W. Va. 324, 327. See also: *State* v. *Scaggs,* 99 W. Va. 689, 691, 129 S. E. 705; *Commonwealth* v. *Jackson,* 2 Va. Cas. 501; 15 Am. Jur. 52.

The assignments of error based upon the State's instructions given over the defendants' objections under the rule announced in *State* v. *Belcher,* 121 W. Va. 170, 2 S. E. 2d 257, necessitates deciding first whether this case is to be regarded as a misdemeanor prosecution or as a prosecution for a felony. Under the·express provisions of Code, 61-2-9, no misdemeanor is included. It provides that both malicious and unlawful assaults are felonies. Either must be done with the intent "to maim, disfigure, disable or kill,". Malicious assault is punishable by confinement in the penitentiary not less than one nor more than five years or by confinement in jail not more than twelve months and a fine of not to exceed five hundred dollars. However, in spite of the fact that no misdemeanor is mentioned in the section under which the indictment was drawn, plainly under the provisions of Code, 62-3-14, a verdict for

a simple assault punishable as for a misdemeanor, and not based upon a finding of intention to permanently injure, is to be sustained. That mere fact does not, however, decide nor in our opinion materially affect the question of whether this is to be regarded as a misdemeanor or a felony prosecution. Plainly, under the statutory language used in the indictment as drafted, the case is to be regarded as a prosecution for felony because there are only felonies described in Code, 61-2-9, and consequently an indictment that follows its language is descriptive only of a felony. The fact that under Code, 62-3-14, a misdemeanor verdict may be returned and that the court may instruct the jury, as here, concerning only a misdemeanor conviction because in its judgment the evidence justifies that only, does not alter the fact that trial under an indictment drafted in the language of Code, 61-2-9, must be regarded as a felony prosecution. That would be our opinion in this instance were it not for the fact that the indictment fails to allege that the acts charged to have been done by the accused were committed "feloniously." Under our West Virginia cases the word "feloniously" is regarded as a word of art, necessarily used in a felony indictment to inform the accused, definitely and positively, concerning the nature of the charge that he will be required to answer, as well as its general classification as to possible punishment. *State* v. *Vest*, 21 W. Va. 796, 806; *State* v. *Whitt*, 39 W. Va. 468, 19 S. E. 873. We therefore conclude that since in this matter there could not have been a trial for a felony because not charged, that the proceeding must be regarded as a trial for a misdemeanor and that hence the principle of the *Belcher* case does not apply. However, for reasons to be stated in what follows, we are of the opinion that the objection to State's Instruction No. 1 was sufficiently specific to point out what we believe to be prejudicial error therein.

We are of the opinion that State's Instruction No. 1 should not have been given. It reads as follows:

> "The court instructs the jury that if they believe from the evidence beyond all reasonable

doubt that Kessler Smith, Wilbur Stull and Paul Redman were together on the — day of February, 1946, at the forks of the road leading to the home of C. C. Kyle and that the said Kessler Smith, Wilbur Stull, or either of them, unlawfully assaulted and struck C. C. Kyle without justifiable provocation and did him bodily injury and that the said defendant, Paul Redman, was present and either consenting, approving and aiding or abetting in said assault, then you should find the defendants, Kessler Smith, Wilbur Stull and Paul Redman, guilty of assault and battery as charged in the indictment."

The instruction tells the jury that if "the said Kessler Smith, Wilbur Stull, or either of them, unlawfully assaulted and struck C. C. Kyle" with Paul Redman present aiding and abetting, then the jury should find Smith, Stull and Redman guilty of assault and battery. It will be observed that under the disjunctive wording of the instruction that all three could be convicted if Smith and Stull participated with Redman in an assault and also that all three could be convicted if *either* Smith or Stull participated. Under the instruction's wording three persons could be convicted where only two took part. We believe this is fatally defective and under a joint indictment is to be regarded as prejudicial to all three defendants.

We believe also that the objection of counsel for the defendants to State's Instruction No. 1 is sufficient to justify its consideration in the aspect just discussed even in a misdemeanor case. Counsel for the defendants objected to exactly the language quoted and although his reasons differ from those above given, nevertheless his objection was sufficient to call the attention of the trial judge to the plain error above discussed.

State's Instruction No. 3 had to do with reasonable doubt and we think was correctly given.

The defendants' assignment having to do with the refusal of the court to give Instructions Nos. 4, 5, 9 and 10, offered on behalf of the defendant, we believe is not well

taken. Instruction No. 4 was phrased so that it would prevent the return of a verdict of guilty of a misdemeanor. As we have already stated, there could be a verdict returned for simple assault. Consequently the instruction was properly refused. Instruction No. 5 is based upon a person's right to resist an assault without retreating. We think that the evidence did not justify an instruction based upon that theory. Defendants' Instruction No. 9 in effect told the jury that no verdict for a simple assault could be returned, but that the only possible verdicts were those based upon a finding of the intention to maim, disfigure, disable or kill. This we think was erroneous and properly refused. Defendants' Instruction No. 10 was based upon the fact that Paul Redman had appeared before justice of the peace Maloney, been tried and convicted and had satisfied the fine. For reasons already given we believe that this instruction also was properly refused.

For the foregoing reasons the judgment of the Circuit Court is reversed, the verdict set aside and a new trial awarded the defendants.

*Reversed.*