STATE *ex rel.* ROBERT VANDAL

*v.*

D. E. ADAMS, *Warden,* WEST VIRGINIA PENITENTIARY

(No. 12050)

Submitted July 12, 1960.     Decided July 23, 1960.

*Frank L. Taylor, Jr.,* for relator.

*W. W. Barron,* Attorney General, *George H. Mitchell,* Assistant Attorney General, for respondent.

BROWNING, PRESIDENT:

Petitioner, a prisoner in the West Virginia State Penitentiary, invoked the original jurisdiction of this Court by filing herein his petition asking for a writ of habeas corpus ad subjiciendum. The petitioner alleged that his "imprisonment, detention, confinement and restraint in the Penitentiary of the State of West Virginia is illegal, unreasonable, unconstitutional and void; * * *." On July 5, 1960, the writ was granted, returnable July 12, 1960. Counsel was appointed for the petitioner and on the return day the Attorney General, appearing for the respondent, produced the body of the petitioner, demurred to the petition and upon briefs and oral arguments by counsel the case was submitted for decision.

An exhibit filed with the petition is a certified copy of the indictment to which petitioner entered a plea of guilty and was sentenced to confinement in the penitentiary for a period of ten years. The indictment, insofar as pertinent, is in this language: "The Grand Jurors of the State of West Virginia, in and for the body of the County of Berkeley, and now attending said Court, upon their oaths present that Melvin Gerst, John Soto and Robert Vandal, on the _____ day of November, 1959, in the County and State aforesaid, in and upon one Kenneth W. Green, with certain dangerous weapons called a knife and pistol, said pistol then and there being loaded with gunpowder and leaden bullets, with which the said Melvin Gerst, John Soto and Robert Vandal were then and there armed, and also

with other actual violence, did make an assault, with intent good and lawful currency of the United States of America of the money, goods and chattels of him the said Kenneth W. Green from the person and against the will of him the said Kenneth W. Green by force and violence, and by assaulting and putting him in bodily fear and danger of his life, to steal take and rob, against the peace and dignity of the State.''

The sole question raised by the pleadings in this case is whether the judgment order, commitment and subsequent confinement of the petitioner in the penitentiary under this sentence are illegal since the indictment to which he pleaded guilty did not contain the word ''feloniously''.

Code, 61-11-1, as amended, reads in part: ''Offenses are either felonies or misdemeanors. Such offenses as are punishable with death or confinement in the penitentiary are felonies; all other offenses are misdemeanors.'' Code, 61-2-12, as amended, entitled: Robbery or Attempted Robbery; Penalties; Bank Robbery and Assaults in Committing or Attempting; Penalties., reads: ''If any person commit, or attempt to commit, robbery by partial strangulation or suffocation, or by striking or beating, or by other violence to the person, or by the threat or presenting of firearms, or other deadly weapon or instrumentality whatsoever, he shall be guilty of a *felony,* and, upon conviction, shall be confined in the penitentiary not less than ten years. If any person commit, or attempt to commit, a robbery in any other mode or by any other means, except as provided for in the succeeding paragraph of this section, he shall be guilty of a *felony,* and, upon conviction, shall be confined in the penitentiary not less than five years.'' (Italics Supplied.) The other paragraph of the section relates to the forcible taking of money or property from a bank, the penalty for which is not less than ten years nor more than twenty years confinement in the penitentiary, or if an assault occurs, or the life of any person is put in jeopardy by the use of a dangerous weapon, the penalty is not less than ten nor more than

twenty-five years. If "robbery" is committed in the manner described in the first sentence of the first paragraph, it becomes what is commonly called "armed robbery", though that term may not be entirely accurate, and if "robbery" is committed in the manner provided in the second sentence of the first paragraph, it becomes what is usually referred to as "unarmed robbery". We are not here concerned with the provision of the section relating to "bank robbery". A revisers' note states that the section "is amended to define robbery." This section, prior to the revision and adoption of the present official Code in 1931, provided simply that: "If any person commit robbery, being armed with a dangerous weapon, he shall be confined in the penitentiary not less than ten years; if not so armed, he shall be confined therein not less than five years." In interpreting this section, prior to the revision, this Court held that it did not define robbery, but merely prescribed the punishment. *Franklin and Ponto v. Brown, Warden, etc.,* 73 W. Va. 727, 81 S. E. 405; *State v. McCoy,* 63 W. Va. 69, 59 S. E. 758.

Without reference to the revisers' note, this Court said in *State v. Young,* 134 W. Va. 771, 61 S. E. 2d. 734, decided in 1950, that: "We think we are correct in saying that there is no statutory definition of the crime of robbery, although in some of its aspects it is referred to in Code, 61-2-12. At common law, robbery was defined as 'The felonious taking of money or goods of value from the person of another or in his presence, against his will, by force or putting him in fear'. * * *."

In *State ex rel. Vascovich v. Skeen,* 138 W. Va. 417, 76 S. E. 2d. 283, a prisoner sought release from the State Penitentiary on writ of habeas corpus ad subjiciendum upon the ground that the indictment under which he was convicted did not charge a crime under the provisions of Code, 61-2-12, as amended, but rather an attempt to commit a felony other than armed robbery under the provisions of Code, 61-11-8, which carries a less severe penalty. The indictment there considered followed the statutory form and the Court in

holding that the allegations therein charged the petitioner with a felony under the provisions of Code, 61-2-12, as amended, said: "We think, however, that if the indictment effectively charged a crime, it was that described in the first sentence of the statute. We say this, because the indictment charges the petitioner 'in and upon one Lillian Pearl Hudkins and assault did *feloniously* make and her, the said Lillian Pearl Hudkins, did then and there *feloniously* put in bodily fear, * * *.' So the indictment charges that the petitioner made a *felonious* assault in an attempt to steal, take and carry away property in the custody of the person assaulted. Thus, the indictment, in our opinion, satisfies the wording of the first sentence of the statute, * * *." (Italics supplied.)

In *Barker v. Commonwealth*, 2 Va. Cas. 122, decided in 1817, the defendant was convicted upon an indictment charging him with larceny of certain bank notes, and his motion in arrest of judgment upon the ground that the indictment did not contain the word "feloniously" was overruled, but the appellate court reversed the trial court and in its opinion said: "It seems, therefore, to be too late, even if there was some ground for doubt, to unsettle this question, and thereby set aside a practical construction of these Laws of so long standing, and disturb all the Cases which have been decided under it. A majority of the Court are, upon the whole, of opinion, that it is error in not alleging that the taking of bank notes in the Indictment mentioned, was done feloniously." To the same effect is the case of *Randall v. Commonwealth*, 24 Gratt. 644, decided in 1874.

In *State v. Whitt*, 39 W. Va. 468, 19 S. E. 873, decided in 1894, the defendant was convicted of the malicious killing of an animal belonging to another. The judgment was reversed, the verdict of the jury was set aside upon writ of error, and in the opinion Judge Dent said: "'* * * Does the indictment charge a felony? The offense is not alleged as 'feloniously' committed; hence under the settled law of this state the indictment does

not charge a felony, but is manifestly bad for that purpose.'' In the recent case of *State v. Smith,* 130 W. Va. 183, 43 S. E. 2d. 802, the 1st Syllabus Point succinctly states: ''In a felony indictment it is necessary to charge that the acts alleged to have been done by the accused were done 'feloniously.' '' *State v. Vest,* 21 W. Va. 796; *State v. McClung,* 35 W. Va. 280, 13 S. E. 654.

The Virginia Court in *Jolly v. Commonwealth,* 136 Va. 756, 118 S. E. 109, held that an indictment charging a statutory crime, which is punishable with confinement in the penitentiary, need not charge that the acts were feloniously done where the statute defining the crime does not use that word or the word felony as a part of the definition. In the opinion, the court said: ''* * * The offenses charged in the third and fourth counts of the indictment are statutory, and neither the word 'felony' nor the word 'feloniously' is used in the definition.* * *.'' In support of this rule, reference was made to Section 4877 of the Code of Virginia which provides that it is the judicial and legal policy of that state to have both civil and criminal cases ''tried on their merits and as far as possible to ignore mere formal defects.'' *Bannon v. U. S.,* 156 U. S. 464, 15 Sup. Ct. 467, 39 L. Ed. 494, and other authorities were cited in support of this decision. In the opinion, the court said: ''* * * In so far as Randall v. Commonwealth, supra, and other like Virginia decisions are in conflict with this conclusion, they will not be hereafter followed.'' The court also stated it was the rule in ''many other states'' that the word ''feloniously'' was essential to the validity of an indictment charging a common law or statutory felony.

Code, 61-2-12, as amended, uses the word ''felony'' twice in the first paragraph and the word ''feloniously'' twice in the first two lines of the second paragraph. Code, 62-9-6, as amended, entitled: Indictment for Robbery, insofar as pertinent, provides: ''An indictment for robbery shall be sufficient if it be in form,

tenor or effect as follows * * * That A * * * being armed
* * * in and upon one B . . . . . an assault did *feloniously*
make, and him, the said B . . . . . did then and there
*feloniously* put in bodily fear, and * * * then and
there *feloniously* and violently did steal, take and carry
away, * * *." (Italics supplied.) It will be noted that in
this statutory form of indictment for robbery the word
"feloniously" is used three times. Code, 62-2-11, is the
criminal statute of jeofails of this State. This Court, in
interpreting this section, in *State v. Davis,* 87 W. Va.
184, 104 S. E. 484, said: "* * * its only purpose is to
cure defects due to the technical and unwarranted
judicial distinctions introduced into the common law
without jeopardizing the rights of the state or the
accused. The omission of the word 'felonious,' used
to describe the larcenous intent to steal bank notes, is
not within the curative provisions of the statute, * * *."

The indictment upon which this petitioner was con-
victed and sentenced to the penitentiary for a term of
ten years did not charge him with the commission of a
felony. Under the provisions of Code, 61-11-1, as
amended, all offenses which are not felonies are misde-
meanors. A person convicted of a misdemeanor may be
punished only by fine and imprisonment in jail not to
exceed one year. Therefore, the sentence, judgment and
commitment by which this petitioner is confined in the
penitentiary for a term of ten years are void. That
being so, he is illegally restrained of his liberty without
authority of law and habeas corpus is the proper
remedy by which he may secure his freedom from such
illegal restraint. Upon the writ heretofore awarded,
the respondent will be directed to discharge the pris-
oner forthwith from his custody as warden of the
penitentiary. Perhaps this opinion could have been
written better in three sentences: No person can be
held in the penitentiary of this State against his will
who has not been charged in the manner provided by
law with a felony. This man is so held and wants out.
The warden will be directed to turn him loose.

*Prisoner discharged.*

CALHOUN, JUDGE, dissenting:

Being of the opinion that the conclusion reached in the majority opinion is indefensible in the year 1960, I register my dissent respectfully.

The majority opinion states that "the *sentence, judgment* and *commitment* are * * * void." (Italics supplied.) I do not understand that the indictment itself is held to be void. The apparent result is that the *indictment* is not void, but the *imprisonment* thereunder is held to be void in this proceeding attacking such imprisonment collaterally.

The early Virginia cases and the West Virginia cases referred to, which raised the question of the omission of the word "feloniously" from indictments, all involved direct appellate proceedings. So far as I am able to determine, this represents the *first* instance in which, in a collateral proceeding, a sentence has been held in either state to be a nullity because of the omission from the indictment of the word "feloniously". I simply find it abhorrent to share in the establishment of this sort of precedent, and in the perpetuation and extension of an ancient rule having no basis in reality in this day.

Article III, Section 4, of the Constitution of West Virginia provides that no person shall be held to answer for a felony "unless on presentment or indictment of a grand jury." Article III, Section 14, provides that "the accused shall be fully and plainly informed of the character and cause of the accusation." I watched the prisoner as he sat in the courtroom during the argument of this case. He had been represented by counsel in the trial court; he had been arraigned on the indictment; he had entered a plea of guilty; and sentence had been imposed by an able jurist who no doubt is fully as solicitous as we are of the rights of the prisoner. As I watched the prisoner during the arguments on this technical question, and as I noted his apparent perplexity and lack of comprehension of the significance of it all, I felt that his reaction must

have been: "I wish somebody would please explain to me why it is that this indictment returned by a grand jury fails to inform me of the 'character and cause of the accusation.'"

If the prisoner experienced difficulty in comprehending the informative and elucidative significance of the magic word "feloniously", I confess that he was not alone in that respect. I have sought enlightenment in law books, but my inability to comprehend the magic significance of the word continues. I am unable to find that it is required by any constitutional or statutory provision.

Code, 61-11-1, provides in part: "Such offenses as are punishable with death or confinement in the penitentiary are felonies; * * *." As the majority opinion states, prior to its revision in 1931, Code, 1923, Chapter 144, Section 12, did not define robbery, but was as follows: "If any person commit robbery, being armed with a dangerous weapon, he shall be confined in the penitentiary not less than ten years; if not so armed, he shall be confined therein not less than five years." Code, 61-2-12, as amended, is, in part, as follows: "If any person commit, or attempt to commit, robbery by partial strangulation or suffocation, or by striking or beating, or by other violence to the person, or by the threat or presenting of firearms, or other deadly weapon or instrumentality whatsoever, he shall be guilty of a felony, and, upon conviction, shall be confined in the penitentiary not less than ten years." The Revisers' Note states: "Section 12, c. 144, Code, 1923, is amended to define robbery." It will be seen hereinafter, I believe, that it is important that the statutory language on which the indictment in this case was predicated defines an offense and provides that a violation thereof constitutes "a felony." In any event, it is a felony and so declared by Code, 61-11-1, because it is punishable by confinement in the state penitentiary. Hence the presence or absence of the word "feloniously" from the indictment does not determine whether the offense charged therein is or is not a felony. The pre-

sence of the word "feloniously" in an indictment can not make a felony of an offense which is defined by statute to be a misdemeanor.

It is true that Code, 62-9-6, prescribes a form of indictment for robbery, stating that an indictment for that offense "shall be sufficient if it be in form, tenor or effect", as therein prescribed, and it is true that the statutory form contains the word "feloniously." It has been held many times that such statutory forms of indictments are directory merely, and that the exact language thereof is not indispensable to a valid indictment. *State v. Bruner,* 143 W. Va. 755, 105 S. E. 2d 140, at pages 144-145. It has been held that the word "feloniously" may be omitted from an indictment, though contained in the statutory form, where such word is not essential to charge the offense. *State v. Smith,* 119 W. Va. 347, 193 S. E. 573.

The legislature has pointed the way for the courts in an effort to strip criminal law procedure of technicalities, but this Court has needlessly failed to make its own contribution. Code, 62-2-9, is as follows: "All allegations, unnecessary to be proved, may be omitted in any indictment or other accusation." Code, 62-2-10, deals in detail with defects which shall not invalidate an indictment and specifically states that an indictment shall not be deemed insufficient "for the omission or insertion of any other words of mere form or surplusage." The case of *State v. McGraw,* 140 W. Va. 547, 85 S. E. 2d 849, contains an enlightening discussion of what constitutes mere form or surplusage in indictments. The first point of the syllabus is as follows: "Immaterial, unnecessary and harmless averments, which might be omitted without affecting the charge in an indictment against the accused and which need not be proved, may be properly considered and rejected as surplusage." Code, 62-2-11, is as follows: "Judgment in any criminal case, after a verdict, shall not be arrested or reversed upon any exception to the indictment or other accusation, if the offense be charged therein with sufficient certainty for judgment to be

given thereon, according to the very right of the case." In discussing this statute the Court, in the second point of the syllabus of the case of *State v. McGinnis*, 116 W. Va. 473, 181 S. E. 820, stated: "By failure to challenge the sufficiency of an indictment the accused does not waive the objection that *the facts averred do not constitute an offense.*" (Italics supplied.) Otherwise, the defect is cured. Hence, the majority opinion necessarily implies that the indictment without the word "feloniously" does not aver an offense; that such word in this day is not one "of mere form or surplusage", as stated in Code, 62-2-10; and that the omission of the word from the indictment renders the charge of the offense so uncertain that judgment may not be given on the plea of guilty "according to the very right of the case", in accordance with Code, 62-2-11.

What is the meaning of the word which is being accorded such significance in apprising the accused "of the character and cause of the accusation?" It is at this point that I, notwithstanding my access to law books and dictionaries, experience a difficulty similar to that the prisoner appeared to me to evidence as he sat in the custody of the guard in the courtroom during the abstruse and esoteric discussion of the subject by counsel. In the case of *State v. Smith,* 130 W. Va. 183, 187, 43 S. E. 2d 802, 804, we find the following basis of enlightenment on the subject of the contribution the word makes toward the constitutional mandate of apprising the accused of "the character and cause of the accusation": "Under our West Virginia cases the word 'feloniously' is regarded as a word of art, necessarily used in a felony indictment to inform the accused definitely and positively, concerning the nature of the charge that he will be required to answer, as well as its general classification as to possible punishment." See also 36 C. J. S., Felon-Feloniously; Black's Law Dictionary (4th Ed.) 744. "The term 'felony', in the general acceptation of the common law comprised every crime which at common law occasioned a total forfeiture of lands or goods, or both, and to which

might be superadded capital or other punishment according to the degree of guilt. Forfeiture for felony has been abolished both in England and in the United States, so that the term 'felony' no longer has its original meaning; * * *." 22 C. J. S., Criminal Law, Section 6, page 55. In this connection I quote an interesting portion of the opinion in the case of *State v. Felch*, 58 N.H. 1:

"* * * What would 'feloniously' mean in this indictment? Would it inform the defendant that, in England, felony was formerly punished by forfeiture, and generally by death? An indictment is an accusation, and not historical instruction. Would it inform him that New Hampshire punishes his crime either by death or state prison? That would be a statement of law, deficient in certainty; and an indictment is a statement, not of law, but of fact. 1 Bishop Cr. Pro., ss. 52, 53, 274, 275. Would it charge him with knowledge of the burglary, or an intent to assist the burglar in escaping punishment? That knowledge and that intent are fully and plainly, substantially and formally, charged in other and appropriate words. Would it signify that his knowledge, his intent, or his act, was felonious? That would be a hint concerning the penalty; and the penalty, being matter of law, need not be suggested. Would it signify that his knowledge, his intent, or his act, was criminal? That would be an unnecessary averment of law. Would it be a memorial of the general confederacy among English prosecutors, witnesses, juries, judges, and ministers of the crown, in favor of life, to prevent the enforcement of a code of two hundred capital crimes? 2 Paterson Liberty of the Subject 309, 310. It is not necessary that the grand jury should thus remind the accused or the court that there is no legal or moral ground on which such a confederacy can survive the reason and object of its existence. Darling v. Westmoreland, 52 N. H. 401, 407, 408."

With reference to the use of the word "feloniously" in indictments, it is stated in 42 C.J.S., Indictments and Informations, Section 135, pages 1028 and 1029: "On the other hand, *by the weight of authority,* the averment is required only when the term 'feloniously' or 'felonious intent' is used in the statute to describe

the crime, or the statute refers to a common-law offense by name only and its use was essential to a proper description of the offense at common law; and if the crime is made a felony by statute, and the indictment or information charges an act which of itself constitutes a felony under the statute, it is not necessary to charge that the act was done feloniously, unless the statute makes a felonious intent an element of the offense; but this rule has been held not to extend to common-law crimes which the statute does not define, but of which it simply fixes the punishment. Under this rule, it is sufficient to follow the language of the statute without using the word 'feloniously', and if the word is used, it may be rejected as surplusage and does not vitiate the indictment. * * *'' (Italics supplied). See also *Jolly v. Comm.*, 136 Va. 756, 118 S. E. 109; *Staples v. Comm.*, 140 Va. 583, 125 S. E. 319.

The Court is adhering to a rule which has no substance in this day. In the case of *State v. Robison*, 109 W. Va. 561, 155 S. E. 649, in his dissenting opinion at page 565 (p. 650 S. E.), Judge Hatcher quotes Justice Holmes as follows: " 'It is revolting to have no better reason for a rule of law than that so it was laid down in the time of Henry IV. It is still more revolting if the grounds upon which it was laid down have vanished long since, and the rule simply persists from blind imitation of the past.' '' Judge Hatcher stated in the same dissent at page 570 (p. 652 S. E.): "A collar of precedents may stifle legal expansion as effectually as the Thurian halter. Veneration of precedent, alone, has little utility. That veneration becomes vital when it uses precedent to illuminate the present. Uniformity in decisions is imperative where the circumstances are similar. But that uniformity does not require making a fetish of precedent. Reason, not precedent, is the inspiration of the common law. Courts should be conservative. But that quality need not block progression. Courts must not lag when civilization marches.''

In the case of *State v. Stollings*, 128 W. Va. 483, 494, 37 S. E. 2d 98, 102-3, in his dissenting opinion Judge

Fox stated: ''Eloquent, even lyrical, phrases are used to picture our legal rights, whether they be inherent under our system of Government, or assured by the Constitution and Bill of Rights. With that position, and the spirit which prompts it, I do not disagree. But I would like to hear some voice raised in behalf of the law-abiding people of the State, to whom crime is abhorrent, and who expect the law-enforcement agencies of the State, in all its subdivisions and departments, to protect them. I would like to hear some one speak for the conscientious and honest law enforcement officers who, in their line of duty, are hampered and impeded in their work by unreasonable rules to which men resort when accused of crime, and which rules are, in my opinion, too often recognized by the courts. I would give every accused person a fair trial. He is entitled to that and no more. He is not entitled to be coddled, nor, if guilty, to have freedom awarded to him by a court on some excuse which cannot be related to the realities of the situation presented.'' The following is quoted from 1 Wigmore on Evidence (3d Ed.), Section 21, page 375: ''Secondly, the complaisant sentimentality of judges in criminal cases must cease. Reverence for the Constitution is one thing, and a respect for substantial fairness of procedure is commendable. But the exaltation of technicalities of every sort merely because they are raised on behalf of an accused person is a different and a reprehensible thing. There seems to be a constant neglect of the pitiful cause of the injured victim, and the solid claims of law and order. All the sentiment is thrown to weight the scales for the criminal — that is, not for the mere accused, who may be assumed innocent, but for the man who upon the record plainly appears to be the offender that the jury have pronounced him to be. * * *. A false sentiment misapplies their energies. This they must unlearn. The epoch of governmental oppression has passed away; the epoch of individualistic anarchy has taken its place. They must learn the lesson of transferring the emphasis of their sympathies, — a lesson more than once read to

580

them by the voices of their own fellow-members of the judiciary: * * *."

The majority opinion displays a faithful consistency with ancient precedent, a slavish adherence to the doctrine of *stare decisis;* but meantime, in my judgment, justice and common sense go begging. I would hold that the word "feloniously" is not necessary in an indictment unless made a part of a statutory definition of the offense; and that, in any event, its omission in this instance is cured by the provisions of Code, 62-2-11.